**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

In re:

                                  **Chapter 11**

**CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL –
WILLISTON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,**

                                  **Case No. 1:12-bk-10431-KKS**

      **Debtor.**

_____/

**DEBTOR'S RESPONSE TO COURT'S ORDER
REGARDING APPOINTMENT OF A PATIENT CARE OMBUDSMAN**

Cypress Health Systems Florida, Inc. (the "**Debtor**"), by and through its undersigned attorneys, hereby responds to this Court's Order Regarding Appointment of a Patient Care Ombudsman dated October 9, 2012 [Doc. No. 8] (the "**Ombudsman Order**"). The Debtor asserts that the appointment of a patient care ombudsman is not necessary under the facts and circumstances of this case. In the alternative, if a patient care ombudsman is appointed by the Court, the Debtor requests that the Court limit the scope of the patient care ombudsman's responsibilities. In support of its Response, the Debtor states as follows:

**Background**

1. On October 5, 2012, the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor operates a 40-bed private hospital operating under the name of Tri County Hospital - Williston and located at 125 SW 7th Street in Williston, Florida (the "**Hospital**"). The Hospital serves the populations of Levy, Gilchrist, Dixie and Marion Counties, Florida. The next closest hospitals to serve the populations in these areas are located in Ocala and Gainesville and are approximately 22 to 27 miles away. The Hospital's services include short-term acute care, a 24-hour emergency room, a respiratory therapy department, and a community wellness outreach program. The Hospital also provides services to Medicaid and Medicare patients. Medicaid patients younger than 18 years of age are provided services with no charge and patients 18 years of age or older are provided services for a minimal charge.

4. The Debtor is a wholly-owned subsidiary of Mid Florida Healthcare Holdings, Inc., a Florida corporation.

**<u>Response to Ombudsman Order</u>**

5. The Ombudsman Order permits a response as to whether the appointment of a patient care ombudsman is not necessary for the protection of the Debtor's patients under the specific facts of this case. The Debtor asserts that, although it is a health care business, a patient care ombudsman is not necessary in view of the likely sale of the Debtor's assets as a going concern, including the Debtor's Hospital facility. The Debtor requests an evidentiary hearing for the Court to make such a determination. Alternatively, if the Court finds that a patient care ombudsman is required, the Debtor requests that a patient care ombudsman's duties be limited in scope to monitoring the current quality of

2

patient care at the Hospital and not extend to any involvement in the anticipated sale process or other aspects of this case.

### Patient Care Ombudsman Not Necessary Under Facts of This Case

6.      The role of the patient care ombudsman is to monitor the quality of patient care and to represent the interests of the patients of the health care business, unless this Court finds that the appointment of the patient care ombudsman is not necessary for the protection of patients under the specific facts of this case.   The legislative history of the "ombudsman" provision is sparse.   There is little guidance in the statute or legislative history as to what facts and circumstances would dictate the non-appointment of a patient care ombudsman.   Courts interpreting Section 333 of the Bankruptcy Code have identified a number of factors to guide the determination of whether a patient care ombudsman is necessary under the facts of a particular case, and application of these factors to this case would dictate the non-appointment of a patient care ombudsman.

7.      As discussed in the Debtor's pleadings on file with this Court, the Debtor will likely seek Court approval for the sale of substantially all of its assets pursuant to Section 363 of the Bankruptcy Code or through a plan of liquidation, and the Debtor believes a sale will take place in short order.

8.      Section 333(b)(2) of the Bankruptcy Code provides that an ombudsman shall make reports to the court "not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter."   It is expected that in this case the Debtor's assets will be sold before even the first ombudsman report is to be made.   In addition, significant practical issues will surround the appointment of a patient care

3

ombudsman that may require time to resolve.  Some issues that come to mind, and that have arisen in other health care cases, include:

(a)    whether the patient care ombudsman is disinterested (a statutory requirement, and perhaps the least difficult to resolve);

(b)    what is the compensation of the patient care ombudsman;

(c)    what are the duties of the patient care ombudsman;

(d)    is the ombudsman going to request the right to review patient records pursuant to Section 333(c)(1) and, if so, what conditions should be attached to this review;

(e)    whether the patient care ombudsman is willing to serve without indemnification from the estate or the Debtor should its recommendations as to patient care turn out to be ill-founded;

(f)    if not, whether indemnification is appropriate, and on what terms;

(g)    whether the patient care ombudsman should obtain insurance to protect the estate or be permitted to obtain its own insurance as a cost of administration; and

(h)    whether the patient care ombudsman requires the representation of counsel and, if so, whether the cost of any such representation should be a cost of administration.

If an ombudsman is appointed, then correspondingly all related issues – such as those listed above – must be resolved.  The Debtor makes this point because all of these issues take time to resolve and will be an administrative burden to this estate.   In this case, it may be

4

that no duties will remain to be performed by the patient care ombudsman by the time that these issues are sorted through since the Debtor may have already consummated a sale of its assets.

9.      The Debtor urges that, in the absence of any evidence of an exigent need to review patient care, and with the debtor in possession financing currently available to maintain a high level of patient care, there is no present need for a patient care ombudsman. The absence of any compelling need to review patient care and the possibility of a sale in short order constitutes sufficient cause not to appoint a patient care ombudsman.

10.      Alternatively, the totality of the facts and circumstances demonstrates that a patient care ombudsman is not required in this case.   One court has identified nine factors to be considered in deciding whether the specific facts of the case require an ombudsman:

(a)      the cause of the bankruptcy;

(b)      the presence and role of licensing or supervising entities;

(c)      the debtor's past history of patient care;

(d)      the ability of the patients to protect their rights;

(e)      the level of dependency of the patients on the facility;

(f)      the likelihood of tension between the interests of the patients and the debtor;

(g)      the potential injury to the patients if the debtor drastically reduced its level of patient care;

(h)      the presence and sufficiency of internal safeguards to ensure appropriate level of care; and

5

(i)    the impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007) (Ray, J.)  The Debtor believes these factors would be appropriate to consider in cases where a health care debtor's operations were to continue for any extended period of time.

11.    Applying these factors, the Debtor's bankruptcy was not caused to any degree by issues related to patient care or the quality of services provided to patients. Under similar circumstances, courts have held that an ombudsman is not required.  *See*, *e.g.*, *Alternative Family Care*, 377 B.R. at 759 (finding ombudsman not necessary where fire caused by electrical failure, inadequate insurance coverage and resulting loss of revenue and costs to rebuild, not patient care, were causes of filing); *In re William L. Saber, M.D., P.C.*, 369 B.R. 631, 638 (Bankr. D. Colo. 2007) (filing caused by dispute with ex-employee); *In re The Total Woman Healthcare Center P.C.*, 2006 WL 3708164 (Bankr. M.D. Ga. 2006) (obligations were tax-related, did not involve patient care issues).   Here, the Debtor's filing was caused by the existence of substantial debt, payments on which became impossible to serve without relief from this Court.   This is a traditional "financial" Chapter 11 case.

12.    In this case, there is little likelihood of tension between the interests of the Debtor and its patients.  The proposed sale will contemplate, and require, a continuation of the Debtor's operations on a substantially similar basis as existed pre-petition.  The Debtor has every incentive to ensure that no alterations in service occur in order to maximize the value of the assets to the proposed purchaser.

6

13.     The Debtor is also subject to review and supervision by several state agencies, which review will be enhanced in connection with any transfer of the Debtor's assets.

14.     Finally, the Debtor asserts that the estate should not be burdened with the additional expense inherent in the appointment of a patient care ombudsman, especially with a forthcoming sale.

### Patient Care Ombudsman's Duties Should Be Limited in Scope

15.     If the Court does find that a patient care ombudsman is necessary for the protection of patients under the specific facts of the Debtor's bankruptcy case, the scope of the patient care ombudsman should be limited to monitoring and reporting on the status and quality of patient care.  The Bankruptcy Code provides that "[a]n ombudsman … shall … monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians."  § 333(b)(1).  An ombudsman must make periodic reports regarding the quality of patient care, and file a motion or report if the patient care provided is "declining significantly or is otherwise being materially compromised."  § 333(b)(2), (3).

16.     The scope of an ombudsman's duties under Section 333 of the Bankruptcy Code are limited to monitoring and reporting on patient care.

WHEREFORE, the Debtor respectfully requests that the Court enter an order finding that the appointment of a patient care ombudsman is not necessary under the facts and circumstances of this case or, alternatively, limiting the scope of the patient care ombudsman's duties as described above.

DATED:   October 30, 2012

/s/ Elena Paras Ketchum
Charles A. Postler
Florida Bar No. 455318
Elena Paras Ketchum
Florida Bar No. 0129267
STICHTER, RIEDEL, BLAIN &
    PROSSER, P.A.
110 Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 FAX
ATTORNEYS FOR DEBTOR
cpostler@srbp.com
eketchum@srbp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the **Debtor's Response to Court's Order Regarding Appointment of a Patient Care Ombudsman** has been furnished on this 30th day of October, 2012, by the Court's CM/ECF electronic mail system to the Office of the U.S. Trustee and all other parties receiving electronic noticing.

/s/ Elena Paras Ketchum
Elena Paras Ketchum

8