UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL –
WILLISTON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

    Debtor.
_____/

Chapter 11

Case No. 12-10431-KKS

**THIRD INTERIM ORDER GRANTING
DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO
OBTAIN POSTPETITION FINANCING AND GRANT SENIOR LIENS,
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P. 4001**
[Doc. No. 23]

THIS CASE came on for a third interim hearing on December 6, 2012, at 10:30 a.m. (the "**Third Interim Hearing**"), upon the Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 [Doc. No. 23] (the "**Motion**")[1] filed by Cypress Health Systems Florida, Inc. ("**Cypress Health**" or the "**Debtor**"), for the entry of an order:

    (i)    authorizing the Debtor to borrow on a secured basis from Regional Health Partners, LLC (the "**DIP Lender**") the principal amount of up to $1,000,000.00 (the "**DIP Facility**"), substantially in accordance with the terms of the Motion and the Summary of Terms and Conditions attached to the Motion as Exhibit A (the "**Term**

---

[1]     Unless otherwise indicated, capitalized terms used herein shall have the meaning ascribed to such terms in the Motion.

**Sheet**"), as modified by the terms of (a) that certain Interim Order Granting Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, dated November 20, 2012 [Doc. No. 102] (the "**First Interim Order**"), (b) that certain Interim Order Granting Debtor's Second Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, dated November 20, 2012 [Doc. No. 103] (the "**November 20 Interim Order**"), and (c) that certain Second Interim Order (A) Granting Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, dated January 28, 2013 [Doc. No. 159] (the "**Second Interim Order**" and, together with the First Interim Order and the November 20 Interim Order, hereinafter collectively referred to as the "**Interim Orders**");

(ii)    authorizing the Debtor to (a) execute a promissory note, security agreement and UCC-1 financing statement and such other documents, instruments and agreements (collectively, the "**DIP Loan Documents**") in favor of the DIP Lender consistent with the provisions of the Motion and the Term Sheet and the Interim Orders, and (b) perform all such other acts as may be required in connection with the DIP Loan Documents;

(iii) authorizing the Debtor, under Section 364 of the Bankruptcy Code, to obtain postpetition financing and incur postpetition indebtedness under the DIP Facility, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall be secured by liens on and security interests in all accounts receivable of the Debtor pursuant to Sections 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which liens and security interests shall be senior to all prepetition and postpetition liens or other interests encumbering accounts receivable of the Debtor, except as otherwise provided in paragraph 10 of this Third Interim Order;

(iv) authorizing the Debtor to grant to the DIP Lender, in accordance with Section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim having priority over any and all administrative expenses of and priority claims against the Debtor, subject only to the Carve-Out, as further described in the Motion, the Interim Orders and this Third Interim Order;

(v) modifying and, to the extent necessary, lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the DIP Lender and the Debtor to implement the terms of the Motion in accordance with the Interim Orders and this Third Interim Order; and

(vi) in accordance with Bankruptcy Rule 4001(c)(2), requesting that this Court schedule the Final Hearing (as hereinafter defined) and approve notice with respect thereto.

The Court having considered the Motion, together with the Term Sheet, the Interim Orders, and the budget for the seven-week period from December 10, 2012

through January 26, 2013 filed with the Court at Doc. No. 121 and presented at the Third Interim Hearing (the "**Budget**"); finding, in accordance with Bankruptcy Rules 4001(c)(1) and (2), that due and proper notice of the Motion and the Third Interim Hearing was given under the circumstances; having considered the pleadings filed with the Court; and after due deliberation and consideration of all matters, including the arguments and proffers of counsel at the Third Interim Hearing, and good and sufficient cause appearing therefor, finds and concludes as follows:

    A.    On October 5, 2012 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

    B.    Since the Petition Date, the Debtor has continued to operate its business and manage its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

    C.    No trustee, examiner or committee of unsecured creditors has been appointed in this case.

    D.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought in the Motion include Sections 105, 361, 362, 363, 364 and 545 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

    E.    Prior to the Petition Date, Cypress Health granted liens or security interests (the "**Prepetition Liens**") in the accounts receivable of Cypress Health (the

"**Prepetition Collateral**") which are subject to the relief requested in the Motion, to the following parties: (i) Mid Florida Healthcare Holdings, Inc., (ii) Mohammad Tariq, M.D. and (iii) Jalil Khan, M.D. (collectively, the "**Prepetition Lenders**"). As of the date of this Third Interim Order, no finding has been made as to the extent, validity or priority of the Prepetition Liens of the Prepetition Lenders and the Court makes no such finding herein.

   F. On and following the Petition Date, the Debtor's business operations have been funded, in part, by the collection of receipts generated from the Debtor's operations which may constitute cash collateral as defined in 11 U.S.C. § 363(a) (the "**Cash Collateral**"). Pursuant to 11 U.S.C. § 363(c)(2), on the Petition Date, the Debtor was prohibited from using Cash Collateral without the consent of the Prepetition Lenders or an order of this Court.

   G. In order to obtain permission to use Cash Collateral, on October 9, 2012, the Debtor filed with the Court its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 [Doc. No. 16] (the "**Cash Collateral Motion**").

   H. On November 6, 2012, this Court entered its Interim Order Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001 [Doc. No. 86] (the "**Interim Cash Collateral Order**"). Pursuant to the Interim Cash Collateral Order, the Court authorized

the use of Cash Collateral by the Debtor, on an interim basis, from October 5, 2012 (the Petition Date) through and including November 1, 2012 in accordance with the terms and conditions set forth therein. In addition, in the Interim Cash Collateral Order, as adequate protection, each of the Prepetition Lenders was granted a post-petition replacement lien against the Debtor's Cash Collateral to the same extent, validity, and priority as existed in their favor as of the Petition Date.

      I.      On November 14, 2012, this Court entered its Final Order (A) Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001, and (B) Scheduling Hearing for December 6, 2012, at 9:30 A.M., on Continued Use of Cash Collateral [Doc. No. 91] (the "**November 14 Final Cash Collateral Order**"). Pursuant to the November 14 Final Cash Collateral Order, the Debtor was authorized to use Cash Collateral from October 5, 2012 (the Petition Date) through and including December 9, 2012 in accordance with the terms and conditions contained therein. In addition, in the November 14 Final Cash Collateral Order, as adequate protection, each of the Prepetition Lenders was granted a post-petition replacement lien against the Debtor's Cash Collateral to the same extent, validity, and priority as existed in their favor as of the Petition Date.

      J.      On January 17, 2013, this Court entered its Second Final Order (A) Granting Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to 11 U.S.C. §§ 105(a), 361, 363, 541 and 552 and Bankruptcy Rule 4001, and (B) Scheduling Hearing for

January 17, 2013, at 1:30 P.M., on Continued Use of Cash Collateral [Doc. No. 145] (the "**January 17 Final Cash Collateral Order**").  Pursuant to the January 17 Final Cash Collateral Order, the Debtor was authorized to use Cash Collateral from October 5, 2012 (the Petition Date) through and including January 26, 2013 in accordance with the terms and conditions contained therein. In addition, in the January 17 Final Cash Collateral Order, as adequate protection, each of the Prepetition Lenders was granted a post-petition replacement lien against the Debtor's Cash Collateral to the same extent, validity, and priority as existed in their favor as of the Petition Date.

      K.     The Debtor represents that: (i) an immediate and critical need exists for the Debtor to obtain funds in order to continue the operation of its business; (ii) without such funds, the Debtor will ultimately not be able to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate; and (iii) at this time, the ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money, the use of Cash Collateral and other financial accommodations are vital to restore the confidence of the Debtor's vendors and suppliers, to its patients, to its employees, and to the preservation and maintenance of the going concern value of the Debtor's estate.

      L.     The Debtor represents that it has made efforts to obtain a postpetition loan from third party lenders on terms equal to or better than the DIP Facility.  The Debtor further represents that it is unable to obtain a postpetition loan on as favorable or better terms from any source other than the DIP Lender and that it is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under Section

503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by Section 364(c)(1) or debt secured as described in Section 364(c)(2) or (3) of the Bankruptcy Code.

M.   Financing on a postpetition basis is not available unless the Debtor grants the DIP Lender senior first priority liens and security interests in all of the Debtor's accounts receivable pursuant to Section 364(d) of the Bankruptcy Code as provided in the Interim Orders and this Third Interim Order.

N.   The DIP Lender has provided interim financing pursuant to the Interim Orders in the aggregate amount of $420,500.00 and is willing to provide the new financing contemplated herein, all on the terms and subject to the conditions set forth in the Interim Orders, this Third Interim Order and in the DIP Loan Documents and a finding by the Court that such financing is essential to the Debtor's estate and is being provided in good faith, and that the DIP Lender's security interests, liens, claims, superpriority claims and other protections granted pursuant to the Interim Orders, this Third Interim Order and the DIP Loan Documents will not be affected by any subsequent modification or reversal of the Interim Orders, this Third Interim Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

O.   Notice of the Third Interim Hearing and the proposed entry of this Third Interim Order have been provided to the Office of the United States Trustee for the Northern District of Florida, the Prepetition Lenders, all known holders of prepetition liens against the Debtor's property and assets, and the twenty (20) largest unsecured

creditors of the Debtor. Under these urgent circumstances, requisite notice of the Motion and the relief requested thereby and the Third Interim Hearing has been given in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, Sections 102(1), 363 and 364 of the Bankruptcy Code, and no other notice need be given for entry of this Third Interim Order.

P.    The Debtor represents that: (i) the ability of the Debtor to pay its employees, purchase inventory necessary for the operation of its business, finance its operations, and the availability to it of sufficient working capital through the incurrence of new indebtedness for borrowed money and other financial accommodations is in the best interests of the Debtor and its creditors and estate; (ii) the interim financing authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate and to allow the orderly continuation of the Debtor's business; and (iii) the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the Debtor's ordinary course of business in connection with the operation of its business for the period set forth in the Budget.

Q.    Based on the record before the Court, the Term Sheet, the Interim Orders and the DIP Facility have been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and credit extended and loans made to the Debtor shall be deemed to have been extended, issued, made, or consented to, as the case may be, in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

R.    The terms of the Term Sheet, the Interim Orders and the DIP Facility are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

Accordingly, it is **ORDERED**:

1.    The Motion is granted on a third interim basis strictly to the extent set forth below.

2.    To avoid immediate and irreparable harm to the Debtor's estate, the Debtor is expressly authorized and empowered (i) to borrow up to $60,000.00 from the DIP Lender for the period from December 10, 2012 through January 19, 2013 and perform all of its obligations pursuant to the provisions of the Interim Orders and this Third Interim Order, as set forth in the Budget, except that no payments shall be made to any professionals or to the Prepetition Lenders absent further order of the Court; (ii) to execute and deliver to the DIP Lender the DIP Loan Documents; and (iii) to perform its obligations under the DIP Loan Documents in accordance with the terms thereof, subject in all events to the terms of the Interim Orders, this Third Interim Order and any final order granting the Motion.  Following execution of the DIP Loan Documents, the Debtor and the DIP Lender may enter into any non-material amendments of or modifications to the DIP Loan Documents without the need of further notice and hearing or order of this Court.

3.    Advances under the DIP Facility will bear interest at ten percent (10%) per annum computed on a daily basis based on the amounts outstanding.  Interest shall accrue

on the outstanding balance of the Advances from time to time and shall be payable upon the Maturity Date (as defined below).

4.  To the extent not already paid, the Debtor is authorized to pay up to $10,000 to the DIP Lender for the reasonable costs incurred by the DIP Lender related to the DIP Facility.

5.  All amounts outstanding under the DIP Facility shall become due and payable on the earlier of (i) August 1, 2013, (ii) dismissal of the Debtor's Chapter 11 case, (iii) conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, or (iv) the effective date of the Debtor's plan of reorganization or liquidation (the "**Maturity Date**").

6.  The DIP Facility may be prepaid (in part or in full) at any time without penalty or premium.

7.  The DIP Loan Documents and all indebtedness incurred thereby constitute valid, binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  Absent the consent of the DIP Lender, the rights, remedies, powers, privileges, liens and priorities of the DIP Lender provided for in the Interim Orders, this Third Interim Order and in the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order, an order approving an asset sale under Section 363 of the Bankruptcy Code or otherwise) or by any plan of reorganization or liquidation in this Chapter 11 case or in any subsequent case under the Bankruptcy Code unless the DIP Loan Obligations (as defined below)

have been paid indefeasibly in full in cash and completely satisfied contemporaneously with such order.

8. The automatic stay in effect pursuant to Section 362 of the Bankruptcy Code is hereby vacated and modified so as to permit, to the extent necessary, all payments and applications with respect to the DIP Loan Obligations as provided in the DIP Loan Documents, the Interim Orders or this Third Interim Order.

9. Subject to the terms of the Interim Orders and this Third Interim Order, the Debtor is authorized and directed to take and effect all actions, and to execute and deliver all agreements, instruments and documents, required or necessary for its performance under the DIP Loan Documents, including, without limitation, the execution and delivery of the DIP Loan Documents.

10. As security for the payment and performance of all obligations under, in connection with or relating to the DIP Loan Documents and all obligations and liabilities hereunder (collectively, the "**DIP Loan Obligations**"), the DIP Lender shall be, and hereby is, granted, effective immediately and without the necessity of the execution by the Debtor of financing statements, security agreements, or otherwise, in accordance with Sections 364(c)(1) and 364(d) of the Bankruptcy Code, a valid and perfected first priority, senior lien on and security interest in all of the accounts receivable of the Debtor and its estate (the "**Postpetition Collateral**"); provided, however, that the lien granted to the DIP Lender hereunder shall be junior to (i) the Prepetition Liens of Mohammad Tariq, M.D. and Jalil Khan, M.D., to the extent that they are valid, perfected, first in priority and unavoidable and not subject to set-off, (ii) the replacement liens in favor of

Mohammad Tariq, M.D. and Jalil Khan, M.D. granted by any orders of the Court, and (iii) the Carve-Out (as hereinafter defined).

11. Except as provided in paragraph 10 above, the security interests and liens granted to the DIP Lender shall not be made on a parity with, or subordinated to, any other security interest or lien under Section 364(d) of the Bankruptcy Code or otherwise. Specifically, pursuant to Section 364(d) of the Bankruptcy Code, and except as provided in paragraph 10 above, the security interests and liens granted to the DIP Lender shall prime and be senior in priority to the liens of all other parties having or asserting a lien or security or other interest in the Prepetition Collateral or the Postpetition Collateral.

12. The Court makes no determination at this time as to the extent, priority, or validity of any security interest held by or the obligations owed to the Prepetition Lenders prior to the Petition Date, and the Debtor, the Prepetition Lenders and other parties in interest in this case reserve all rights, defenses and claims with respect to the foregoing. Notwithstanding anything to the contrary contained in the Interim Orders, this Third Interim Order or any other order entered in this case, neither the Debtor nor any other party in interest shall be deemed to have waived any right to challenge the extent, validity or priority of the liens of the Prepetition Lenders.

13. The DIP Loan Obligations shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, claims against the Debtor in its Chapter 11 case which are administrative expense claims having the highest administrative priority over any and all administrative expenses, whenever arising, of the kind specified in any provision of the Bankruptcy Code, including but not limited to, Sections 105, 326, 328, 330, 331,

503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, subject only to the claims of the following parties for the following amounts: (i) for Court-approved fees and expenses of Stichter Riedel, Blain & Prosser, P.A. up to $50,000.00; and (ii) the unpaid fees of the United States Trustee or the Clerk of the Court payable pursuant to 28 U.S.C. § 1930(a) (collectively, the "**Carve-Out**"). Except for the Carve-Out as granted by the Interim Orders and this Third Interim Order, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case or in any subsequent case under Chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to Section 1112 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the claims of the DIP Lender with respect to the DIP Loan Obligations. No other claim having a priority superior to or pari passu with that granted by the Interim Orders or this Third Interim Order to the DIP Lender shall be granted in respect of the Debtor while any portion of the DIP Loan Obligations remains outstanding.

14. The Debtor may use the proceeds of the Advances made pursuant to the DIP Facility in accordance with the Interim Orders, the Budget and this Third Interim Order. Notwithstanding anything to the contrary contained in the Interim Orders, this Third Interim Order or the DIP Loan Documents, the Debtor shall be authorized to continue the use of Cash Collateral in accordance with the terms and conditions of any orders granting the Cash Collateral Motion.

15. The DIP Lender shall not be required to file financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the Interim

Orders, this Third Interim Order or the DIP Loan Documents.  Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, security interests and mortgages without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded as of the Petition Date.

16.     The provisions of this Third Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns. This Third Interim Order shall bind any trustee hereafter appointed or elected for the estate of the Debtor, whether in this Chapter 11 case or in the event of the conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Third Interim Order.

17.     If any or all of the provisions of the Interim Orders, this Third Interim Order or the DIP Loan Documents are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other court, such modification, vacatur, amendment or stay shall not affect the validity of any obligation to the DIP Lender that is or was incurred prior to the effective date of such modification, vacatur, amendment or stay, or the validity and enforceability of any security interest, lien or priority authorized or created by the Interim Orders, this Third Interim Order or the DIP Loan Documents and, notwithstanding any such modification, vacatur, amendment or stay, any obligations of the Debtor pursuant to the Interim Orders, this Third Interim Order or the DIP Loan Documents arising prior to the effective date of such modification, vacatur, amendment

or stay shall be governed in all respects by the original provisions of the Interim Orders, this Third Interim Order and the DIP Loan Documents, and the validity of any such credit extended or security interest or lien granted pursuant to the Interim Orders, this Third Interim Order or the DIP Loan Documents is subject to the protection accorded under Section 364(e) of the Bankruptcy Code.

18. This Third Interim Order constitutes findings of fact and conclusions of law and takes effect and becomes enforceable immediately upon execution hereof.

19. To the extent any of the DIP Loan Documents are inconsistent or conflict with this Third Interim Order, the terms of this Third Interim Order shall control.

20. Upon the entry of this Third Interim Order, counsel for the Debtor shall serve a copy of this Third Interim Order on all parties listed on the Secured Creditors Matrix attached to the Motion.

**DONE** and **ORDERED** *nunc pro tunc* on  February 4, 2013 .

KAREN K. SPECIE
United States Bankruptcy Judge

Copies to:

Cypress Health Systems Florida, Inc., 125 SW 7th Street, Williston, Florida 32696

Charles A. Postler, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602

United States Trustee

20 Largest Unsecured Creditors of the Debtor

MedCath Finance Company, Inc.
10720 Sikes Place - Suite 300
Charlotte, North Carolina 28277

MedCath Finance Company, Inc.
c/o Carol E. Bown
Moore & Van Allen PLLC
100 North Tryon Street - Suite 4700
Charlotte, North Carolina 28202-4003

Wells Fargo Financial Leasing, Inc.
800 Walnut Street, MAC F4031-040
Des Moines, Iowa 50309

Wells Fargo Financial Leasing, Inc.
c/o Corporation Service Company
801 Adlai Stevenson Drive
Springfield, Illinois 62703


Order Prepared By:

Charles A. Postler, Esq.