UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA,　　　　　Chapter 11
INC., d/b/a TRI COUNTY HOSPITAL –　　　　　Case No. 1:12-bk-10431-KSJ
WILLISTON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

　　　　　Debtor.
_____/

**RICHARD MARTIN, M.D.'S OBJECTION TO DEBTOR'S MOTION
FOR ENTRY OF AN ORDER APPROVING BIDDING PROCEDURES**

Creditor, Richard Martin, M.D. ("**Dr. Martin**"), by counsel, hereby objects to *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of its Assets to Regional Health Partners, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines* (Doc. No. 215) ("**Motion**") filed by Debtor Cypress Health Systems Florida, Inc., d/b/a Tri County Hospital—Williston, f/d/b/a Nature Coast Regional Hospital ("**Debtor**"), and states as follows:

**Background**

1. On October 5, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

2. The Debtor is a wholly-owned subsidiary of Mid Florida Healthcare Holdings, Inc. ("**Mid Florida**").

3. Two shareholders of Mid Florida include Dr. Mohammed Tariq and Dr. Jalil Khan.

4. Notwithstanding their equity interests in the Debtor, Mid Florida, Dr. Tariq, and Dr.

Khan all assert liens in the Debtor's accounts receivables.

5. After the Petition Date, the Debtor has obtained various interim orders granting post-petition financing from Regional Health Partners, LLC ("**Regional**").

6. Dr. Tariq and Dr. Khan are also the sole members of Regional.

7. Regional and Mid Florida appear to be essentially the same entity as a component of Regional's bid is prepetition amounts owed by the Debtor to the Buyer.[1] [2]

## Relief Requested

8. Through the Motion, the Debtor seeks approval of an asset purchase agreement wherein Regional purchases essentially all of the assets of the Debtor, but only assumes certain liabilities, including funding a $150,000 pool for unsecured creditors over three years.

9. Among the assets purchased is the Debtor's accounts receivable that became due on and after December, 2010.

10. The purchase price seems to include:

    a. the prepetition and post-petition amounts that the Debtor owes to Regional, which is a moving target with each new interim post-petition financing order entered;

    b. payment of allowed tax claims, which have not been adjudicated;

    c. payment of allowed administrative claims, which have not been filed;

    d. payment of Assumed Liabilities, which include liabilities for accrued PTO, owed to AHCA, owed to Transferred Employees, Accounts Payable, Closing Costs, Transfer Taxes, and "any and all liabilities and obligations in connection with the Assets or the operating of the Hospital from and after the Closing"; and

---

[1] Regional is not scheduled as having a secured claim; however, Mid Florida is scheduled as having a secured claim for $324,610.00.
[2] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion and its exhibits.

    e. $150,000.00 to be paid over three years to unsecured creditors.

11. The Motion also seeks approval of bidding procedures that requires any bidder to provide a written bid of at least $100,000.00 above Regional's purchase offer, among other requirements, with an auction to occur should any such bid is received.

12. Dr. Martin hereby objects to the Motion for various reasons, including, but not limited to the following:

    a. It is unclear as to what the total Purchase Price is for the assets. While it is understandable that the purchase price is a moving target, there is not even an estimate. Accordingly, there is a concern as to how competitive the auction could be if potential bidders are not even informed of the purchase price. Further, without knowing the estimated purchase price, it is difficult to determine if the $100,000 overbid is reasonable.

    b. The asset purchase agreement states that Regional would be liable for unpaid compensation to employees that it is hiring, but Schedule 4, which was supposed to be attached to the asset purchase agreement, was not filed. Accordingly, employees do not know if their claims are being paid in full.

    c. The Motion provides for breakup fee of $75,000. However, since Regional and the Debtor's owner are essentially the same entity, this fee seems unreasonable.

    d. Interestingly, competing bids must be in cash, unless otherwise agreed to by the Debtor. However, Regional's bid includes $150,000.00 for unsecured creditors, which would be funded by old accounts receivables, and if deficient, then by Regional over three years. It is unclear as to whether a competing bidder would only need to backstop these payments or if it would have to provide cash.

e. Further, with the amount for unsecured creditors set at $150,000.00, it is unclear as to whether any overbid would benefit unsecured creditors.

13. Most importantly, it is unclear as to whether the unsecured creditors are receiving at least as much as they would have had the case been filed under Chapter 7 of the Bankruptcy Code.  The Debtor scheduled its accounts receivable at $700,000.00; however, according to the Debtor's monthly operating report, it appears that the Debtor had more than $7,000,000 in accounts receivable as of the Petition Date.

14. While the Debtor scheduled secured claims for Dr. Tariq ($189,000), Mid Florida Healthcare Holdings ($324,610), and Khan ($189,000), Dr. Tariq and Dr. Khan's liens may be avoidable because they appear to have filed their UCC financing statements on the Petition Date and all three of these claims may be recharacterized as equity.

15. Finally, the Debtor has not filed a plan of reorganization or disclosure statement.  It is impossible to determine if the proposed sale is in the best interest of the creditors without providing creditors with all of the information required in a disclosure statement.

WHEREFORE, Dr. Martin respectfully requests the Court deny the Motion and grant such other relief as is just and proper.

DATED this 13th day of March, 2013.

    /s/ *Suzy Tate*
Suzy Tate
Florida Bar No. 22071
Suzy Tate, P.A.
14502 N. Dale Mabry Hwy., Ste. 200
Tampa, Florida  33618
Telephone:  (813) 264-1685
Facsimile: (813) 264-1690
suzy@suzytate.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, via CM/ECF electronic service or U.S. Mail, postage prepaid to: Elena Paras Ketchum, Stichter, Riedel, Blain & Prosser, P.A., 110 E. Madison Street, Suite 1200, Tampa, FL 33602 and all parties receiving notice via CM/ECF transmission on this 13th day of March, 2013.

                                        */s/ Suzy Tate*
                                        Suzy Tate