UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL --
WILLISTON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

      Debtor.

_____/

Chapter 11

Case No. 1:12-bk-10431-KSJ

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
## LIQUIDATION UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Elena Paras Ketchum (Florida Bar No. 0129267)
Charles A. Postler (Florida Bar No. 455318)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:        eketechum@srbp.com
            cpostler@srbp.com
Counsel for Debtor and Debtor in Possession

Tampa, Florida
Dated as of April 3, 2013

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTOR'S PLAN OF LIQUIDATION UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE DATED AS OF APRIL 3, 2013 (AS AMENDED FROM TIME TO TIME, THE "PLAN"), AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR. ANY CREDITOR OR OTHER PARTY BUYING OR SELLING A CLAIM BASED ON THE INFORMATION CONTAINED HEREIN DOES SO AT ITS OWN RISK.

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.  THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF.  EACH CREDITOR AND HOLDER OF AN EQUITY INTEREST SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.

**THE PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE DEBTOR AND VARIOUS NON-DEBTOR PARTIES FOR CERTAIN POSTPETITION ACTIONS IN CONNECTION WITH THE BANKRUPTCY CASE, WHICH PROVISIONS WOULD ENJOIN THE DEBTOR, HOLDERS OF CLAIMS, HOLDERS OF EQUITY INTERESTS, AND OTHER PARTIES FROM PURSUING CERTAIN ACTIONS AGAINST SUCH PARTIES EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.  ALL CREDITORS, HOLDERS OF EQUITY INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY ARTICLE 11.2 OF THE PLAN ON EXCULPATION FROM LIABILITY.**

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. IN ADDITION, THE DISCLOSURE STATEMENT AND THE PLAN HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR THE ACCOMPANYING DOCUMENTS INCORPORATED BY REFERENCE OR REFERRED TO HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.  SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO BANKRUPTCY COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THIS DISCLOSURE STATEMENT IS DATED AS OF APRIL 3, 2013, AND CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE ENCOURAGED TO REVIEW THE DOCKET IN THE BANKRUPTCY CASE IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISCLOSURE STATEMENT AND IN THE ACCOMPANYING PLAN CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.  NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE DEBTOR MAKES ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS OR EQUITY INTERESTS VOTES TO REJECT THE PLAN, (1) THE DEBTOR MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS, OR (2) THE PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS TO ACCEPT THE PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE

BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE SECTION OF THIS DISCLOSURE STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE PLAN."

# DISCLOSURE STATEMENT PURSUANT TO
# SECTION 1125 OF THE BANKRUPTCY CODE

## INTRODUCTION

CYPRESS HEALTH SYSTEMS FLORIDA, INC., d/b/a TRI COUNTY HOSPITAL – WILLISTON, f/d/b/a NATURE COAST REGIONAL HOSPITAL, as debtor and debtor in possession in the Bankruptcy Case (the "Debtor"), has filed with the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division (the "Bankruptcy Court"), its Plan of Liquidation under Chapter 11 of Title 11, United States Code dated as of April 3, 2013 (as amended from time to time, the "Plan"). This Disclosure Statement for Debtor's Plan of Liquidation under Chapter 11 of Title 11, United States Code dated as of April 3, 2013 (the "Disclosure Statement"), is submitted pursuant to § 1125 of the Bankruptcy Code, 11 U.S.C. § 101, et. seq. (the "Bankruptcy Code"), in connection with the solicitation of votes on the Plan from Holders of Impaired Claims against, and Impaired Equity Interests in, the Debtor and the hearing on Confirmation of the Plan scheduled for May 15, 2013, at 1:00 p.m.

This Disclosure Statement has been conditionally approved by the Bankruptcy Court in accordance with § 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims in the Voting Class to make an informed judgment whether to accept or reject the Plan. Such approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement do not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.

**In summary, but subject to more specific details provided herein, the Plan provides for (i) the liquidation of the Debtor's assets after the Confirmation of the Plan and in accordance with a separate order of the Bankruptcy Court providing for the sale of substantially all of the Debtor's assets free and clear of liens, claims and encumbrances, except certain assumed liabilities, to Regional Health Partners, LLC or such other purchaser approved by the Bankruptcy Court; (ii) the assumption of certain liabilities of Creditors by the Purchaser; and (iii) the distribution of certain other assets (primarily consisting of the cash sum of $150,000.00) to the Holders of Allowed Unsecured Claims. All Creditors and other parties in interest are directed to review the Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets to Regional Health Partners, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount, (IV) Approving**

Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines (the "Bid Procedures Motion") [Doc. No. 215]; the order of the Bankruptcy Court granting the Bid Procedures Motion (the "Bid Procedures Order"); and the Debtor's Motion for Order Authorizing the Sale of Substantially All of Its Assets to Regional Health Partners, LLC pursuant to 11 U.S.C. §363, Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion") [Doc. No. 225]. Each of the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.

THE PLAN HAS BEEN APPROVED BY THE DEBTOR. IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

Accompanying this Disclosure Statement are copies of the following documents:

(a)     the Plan;

(b)     the Bankruptcy Court's Order conditionally approving this Disclosure Statement (the "Disclosure Statement Approval Order"); and

(c)     in the case of Impaired Classes of Claims (the "Voting Class") entitled to vote on the Plan, a Ballot for acceptance or rejection of the Plan.

## PURPOSE OF THIS DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Holders of Claims and Equity Interests with adequate information to make an informed judgment about the Plan. This information includes, among other things, (a) the procedures for voting on the Plan, (b) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (c) general information about the history and business of the Debtor prior to the Petition Date, (d) the events leading to the filing of the Bankruptcy Case, and (e) a brief summary related to the proposed sale of the Debtor's assets during the Bankruptcy Case.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the Confirmation of the Plan. All Holders of Claims and Equity Interests are encouraged to review carefully this Disclosure Statement.

Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. Any term used in the Plan or herein that is not defined in the Plan or herein and that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. If there is any conflict between the definitions contained in this Disclosure Statement and the definitions contained in the Plan, the definitions contained in the Plan shall control.

## VOTING INSTRUCTIONS

**Who May Vote**

Only the Holders of Claims and Equity Interests which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. Holders of Class 7 Intercompany Claims and Equity Interests in Class 8 shall not receive or retain any Property under the Plan on account of such Intercompany Claims and Equity Interests and, therefore, Classes 7 and 8 are deemed not to have accepted the Plan and are not entitled to vote. For purposes of the Plan, only the Holders of Claims in the Voting Classes (i.e., Class 2 and Class 6) are Impaired under the Plan and thus may vote to accept or reject the Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 2 and CLASS 6.

**How to Vote**

Each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Plan and any Exhibits thereto, in their entirety. After carefully reviewing the Plan and this Disclosure Statement and any exhibits thereto, please complete the enclosed Ballot, including your vote with respect to the Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Elena Paras Ketchum or Charles A. Postler, counsel to the Debtor, by telephone

at (813) 229-0144 or by electronic transmission at eketchum@srbp.com or cpostler@srbp.com.

**YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND RETURN IT TO THE ADDRESS FOR THE BANKRUPTCY COURT PROVIDED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT BY NO LATER THAN THE VOTING DEADLINE.**

All Ballots should be returned either by regular mail, hand delivery or overnight delivery to:

> Office of the Clerk of the United States Bankruptcy Court
> George C. Young Federal Building
> 400 West Washington Street - Sixth Floor
> Orlando, Florida 32801

**Acceptance of Plan and Vote Required for Class Acceptance**

As the Holder of an Allowed Claim in the Voting Class, your vote on the Plan is extremely important. The Debtor is soliciting acceptances of the Plan only from Holders of Claims in Class 2 and Class 6, which are the only Classes entitled to vote on the Plan. You may be contacted by the Debtor or its agent with regard to your vote on the Plan.

Pursuant to § 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to § 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

To meet the requirement for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims or Equity Interests which votes to reject, or is deemed to vote to reject, the Plan (a "Rejecting Class"), the Debtor would have to show that all Classes junior to the Rejecting Class will not receive or retain any Property under the Plan unless all Holders of Claims or Equity Interests in the Rejecting Class receive or retain under the Plan Property having

a value equal to the full amount of their Allowed Claims or Allowed Equity Interests. For a more complete description of the implementation of the "cram down" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN -- Confirmation Without Acceptance by All Impaired Classes."

**Confirmation Hearing and Objections to Confirmation**

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for May 15, 2013, at 1:00 p.m. of said day (the "Confirmation Hearing"), at the Office of the Clerk of the United States Bankruptcy Court, George C. Young Federal Building, 400 West Washington Street, Sixth Floor, Orlando, Florida 32801, which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to Confirmation of the Plan must be filed and served in accordance with the Disclosure Statement Approval Order.

## SUMMARY OF THE PLAN

**Introduction**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and stockholders. The formulation of a plan is the principal objective of a Chapter 11 case. In general, a Chapter 11 plan (i) divides claims and interests into separate classes, (ii) specifies the property that each class is to receive under such plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor. Chapter 11 does not require each holder of a claim or interest to vote in favor of the plan in order for the Bankruptcy Court to confirm the plan. However, a plan must be accepted by the holders of at least one impaired class of claims (unless there are no impaired classes) without considering the votes of "insiders" within the meaning of the Bankruptcy Code.

The summary of the Plan contained herein addresses only certain provisions of the Plan. As a summary, it is qualified in its entirety by reference to the Plan itself. Upon Confirmation and the Effective Date, the Plan shall bind the Debtor, all of the Debtor's Creditors, the Holders of Equity Interests and other parties in interest except as expressly set forth in the Plan. TO THE EXTENT THAT THE TERMS OF THIS DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL CONTROL.

By way of background, the Bankruptcy Case was commenced on October 5, 2012. The Debtor has determined that it would be in the best interest of its Creditors to

maximize value through a sale of substantially all of its assets pursuant to §363 of the Bankruptcy Code. Absent such a sale, the Debtor would have been forced to liquidate under Chapter 7 of the Bankruptcy Code, which the Debtor believed would achieve far less for Creditors than a sale as a going concern. Accordingly, the Debtor entered into the Asset Purchase Agreement with Regional Health Partners, LLC ("Regional"). For a further description of that transaction, see "Sale of Debtor's Assets Pursuant to the Asset Purchase Agreement" below. In addition to the foregoing, the Debtor entered into a Postpetition financing agreement with Regional in order to fund its Postpetition operating expenses during the course of this Chapter 11 case and such funding is expected to continue until the closing under the Asset Purchase Agreement.

**Sale of Debtor's Assets Pursuant to the Asset Purchase Agreement**

On March 5, 2013, the Debtor and Regional entered into the Asset Purchase Agreement. In the Asset Purchase Agreement, the Debtor agreed to sell to Regional, and Regional agreed to purchase from the Debtor, substantially all of the assets of the Debtor pursuant to and in accordance with Sections 363 and 365 of the Bankruptcy Code free and clear of any and all Liens, excepting certain Assumed Liabilities.

On March 7, 2013, the Debtor filed its Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of its Assets to Regional Health Partners, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines (the "Bid Procedures Motion") [Doc. No. 215].

An executed copy of the Asset Purchase Agreement is attached as an exhibit to the Bid Procedures Motion.

By the Bid Procedures Motion, the Debtor requested that the Court approve bidding procedures in connection with the sale of the Purchased Assets, including (a) approval of procedures for the submission of competing bids, (b) approval of a minimum overbid amount, (c) approve of a break-up fee and (d) approval of the form and manner of notice of the bidding procedures. The Debtor believes that the bidding procedures set forth in the Bid Procedures Motion will assist in determining the highest and best offer available to the Debtor for the sale of the Purchased Assets and the other transactions contemplated by the Purchase Agreement. The Debtor believes that these procedures are favorable to the Debtor, its estate and creditors, and create a fair and level playing field for all interested bidders. The Debtor submits that these proposed procedures will satisfy the interests of all creditors in assuring that the Debtor will achieve the maximum value for the Purchased Assets and the other transactions contemplated by the Purchase Agreement.

At a hearing held on Tuesday, April 2, 2013, the Bankruptcy Court approved the bidding procedures requested by the Debtor and an order approving the Bid Procedures Motion (the "Bid Procedures Order") will be entered by the Bankruptcy Court.

As will be set forth in the Bid Procedures Order, bidding procedures in connection with the sale by the Debtor of substantially all of its assets have been established. The deadline by which any competing bids are to be submitted to the Debtor and its counsel is May 8, 2013 (the "Bid Deadline"). If competing bids are received by the Bid Deadline, an auction to determine the best and highest offer for the Debtor's assets will be held on May 14, 2013 (the "Auction") at the offices of Stichter, Riedel, Blain & Prosser, P.A. at 110 E. Madison Street, Suite 200, Tampa, Florida 33602.

On March 21, 2013, the Debtor filed its Motion for Order Authorizing the Sale of Substantially All of Its Assets to Regional Health Partners, LLC pursuant to 11 U.S.C. §363, Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion") [Doc. No. 225] with the Bankruptcy Court. By the Sale Motion, the Debtor is requesting the Bankruptcy Court to enter a Sale Order and approve (i) the execution and delivery by the Debtor of the Asset Purchase Agreement, and (ii) the sale and purchase of the Debtor's assets and the other transactions contemplated by the Asset Purchase Agreement. The Closing under the Asset Purchase Agreement is contemplated to occur in conjunction with confirmation of the Plan. A hearing on the Sale Motion shall be held before the Honorable Karen S. Jennemann at U.S. Courthouse, George C. Young Federal Building, 400 West Washington Street, Sixth Floor, Orlando, Florida 32801 on May 15, 2013 at 1:00 p.m. (the "Sale Hearing").

As set forth in the Asset Purchase Agreement, the consideration to be paid by the Purchaser to the Debtor for the Purchased Assets shall be the sum determined as of the Closing Date consisting of the following items (collectively, the "Purchase Price"): (i) by credit against amounts owing to Purchaser with respect to the Prepetition Lenders Claims (the "Credit Bid Amount"); (ii) the assumption and/or payment of the Perkins State Bank Claim; (iii) the assumption and/or payment of the Allowed Priority Tax Claims; (iv) the payment of Allowed Administrative Claims; (v) the assumption and/or payment of the other Assumed Liabilities set forth in Section 2.3 of the Asset Purchase Agreement; and (vi) $150,000.00 payable to the holders of Allowed Unsecured Claims against the Debtor in the Bankruptcy Case by quarterly payments over the course of three (3) years.

A spreadsheet outlining the approximate dollar value for the components of the Purchase Price is attached to the Bid Procedures Order. All parties are directed to review this spreadsheet for more detail. A copy of the spreadsheet may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.

As noted above, the Debtor is seeking through the sale process to sell substantially all of its assets free and clear of liens, claims, and encumbrances, excepting certain liabilities being assumed by the purchaser. The Debtor has been advised that

11

Tony Pfaff and Kim Bird assert they have a valid second mortgage against the real property of the Debtor.  The Debtor disputes the validity of the asserted second mortgage and intends to object to their right to assert any claim against the Debtor and its Estate or any mortgage or lien against the Debtor, its real property or its assets.

The above is a brief summary of the material terms of the Asset Purchase Agreement, the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion and holders of Claims and Equity Interests are encouraged to read the Asset Purchase Agreement, the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion in their entirety for a more detailed description.  Each of these documents may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.

**General Overview of the Plan**

On the Closing Date, substantially all of the Debtor's assets will be sold to the Purchaser.  Thus, the Plan provides for the liquidation of substantially all of the Debtor's assets and for the assumption by the Purchaser of certain liabilities and for the distribution of certain other assets to creditors.  With respect to Allowed Unsecured Claims, the Holders of such claims will receive on a quarterly basis for three (3) years such Holder's Pro Rata Share of the Unsecured Creditor Payments in the total amount of $150,000.000, which amount shall be paid by the Purchaser in the event the quarterly payments are not able to be made from Excluded Accounts Receivable.  To the extent collection of the Excluded Accounts Receivable exceeds One Hundred and Fifty Thousand Dollars ($150,000) (after repayment to the Purchaser for any Unsecured Creditor Payments which it has made), Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the the additional collected amounts from the Excluded Accounts Receivable.  In addition, Holders of Allowed Unsecured Claims will receive on a pro rata basis any amounts realized from Cause of Action Recoveries or Excluded Assets Recoveries.  At the present time, the Debtor is unable to predict with certainty the ultimate amount of the Cause of Action Recoveries or Excluded Assets Recoveries.  As of the Effective Date, all of the Class 7 Intercompany Claims and the Class 8 Equity Interests will automatically be deemed cancelled, annulled, and extinguished without any further action by any party and will be of no further force and effect.  The Parent, as the Holder of the Class 7 Intercompany Claims and the Class 8 Equity Interests, will not receive any Distribution or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests.

**Classification of Claims and Equity Interests**

Section 1123 of the Bankruptcy Code provides that a plan of liquidation shall classify the claims of a debtor's creditors and interests of a debtor's equity holders.  The Plan divides the Claims and Equity Interests into eight (8) Classes.

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." The Debtor is required under § 1122 of the Bankruptcy Code to classify the Claims and Equity Interests into separate Classes which contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests within such Classes.

The Debtor believes that it has classified all Claims and Interests in compliance with the provisions of § 1122 of the Bankruptcy Code. However, it is possible that a Holder of a Claim or another interested party may challenge the classification of Claims and Interests contained in the Plan and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the present intent of the Debtor, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. A reclassification of Claims after approval of the Disclosure Statement might necessitate a resolicitation of acceptances or rejections of the Plan.

**Summary of Plan Distributions**

Set forth below is a summary of each Class of Claims and Equity Interests and the expected Distributions under the Plan to Holders of Allowed Claims against the Debtor. Any estimates of Claims set forth in this Disclosure Statement are approximate and are based on amounts scheduled by the Debtor and asserted by Creditors as of the date of this Disclosure Statement. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

*Administrative Expense Claims.* The holders of Administrative Expense Claims are entitled to be paid in full under a plan of liquidation pursuant to the Bankruptcy Code. The Administrative Expense Claims will consist primarily of Postpetition operating expenses incurred by the Debtor, fees and costs of Professionals, fees required to be paid to the United States Trustee, the costs of solicitation of votes on the Plan (including

13

photocopying and postage charges), and any Administrative Expense Claims filed with the Bankruptcy Court by the deadline set forth in the Disclosure Statement Approval Order. The Purchaser under the Asset Purchase Agreement shall pay all of the Allowed Administrative Expense Claims.

The Plan provides that, except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid in full (a) on the Distribution Date, an amount, in Cash, by the Purchaser equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Purchaser, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Purchaser by no later than thirty (30) days following the Effective Date. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Case shall be paid by the Purchaser, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case, including Assumed Liabilities, shall be paid by the Purchaser in the normal course of business.

*Priority Tax Claims.* The holders of Priority Tax Claims are also entitled to be paid in full under a plan of liquidation pursuant to the Bankruptcy Code. The Plan provides that each Holder of an Allowed Priority Tax Claim shall be paid by the Purchaser in deferred equal monthly Cash payments in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than sixty (60) months from the Effective Date. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid

14

under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Purchaser. Based on an analysis of the Proofs of Claim filed to date in the Bankruptcy Case as well as the Claims scheduled by the Debtor, the Debtor believes there may be Allowed Priority Tax Claims, but believes that certain tax amounts asserted are subject to adjustment and amendment.

*Class 1: Priority Claims.* Class 1 consists of all Priority Claims. The holders of Priority Claims are also entitled to be paid in full under a plan of liquidation pursuant to the Bankruptcy Code. The Plan provides that each Holder of an Allowed Priority Claim who is a Transferred Employee shall be paid by the Purchaser upon the earlier of (i) a Final Order as to such Allowed Priority Claim or (ii) entry of the Confirmation Order, an amount, in Cash, equal to the Allowed Amount of his or her Priority Claim in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code. Based on an analysis of the Proofs of Claim filed to date in the Bankruptcy Case as well as the Claims scheduled by the Debtor, other than tax related claims addressed in the "*Priority Tax Claims*" paragraph above, the claims are related to employee asserted priority claims.

An employee is permitted a priority claim if he or she is owed wages, salaries, or commissions (up to $11,725) earned within 180 days before the Petition Date. *See* 11 U.S.C. §507(a)(4). The following employees filed proofs of claim asserting Priority Claims: (i) Carol Pritchard filed Claim No. 43 for approximately $3,100; (ii) James Long filed Claim No. 52 for approximately $11,500; (iii) Dr. Richard Martin filed Claims No. 50.2 asserting a Priority Claim of $11,725; (iv) Susan Bousum filed Claim No. 41 for approximately $11,500; and (v) Susan Roque filed Claim No. 47.2 for approximately $4,300. The Debtor is in the process of reviewing these claims to determine if the amounts asserted are for wages, salaries or commissions earned within 180 days of October 5, 2012 (i.e. the Petition Date). To the extent the amounts asserted were not earned within 180 days of the Petition Date or insufficient documentation was attached to the Proof of Claim to make such a determination, the Debtor intends to file an objection to the Proof of Claim. The Debtor believes that it will be filing objections to most of these claims. Class 1 is Unimpaired by the Plan. Each Holder of a Priority Claim in Class 1 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 2: Secured Claims of Perkins State Bank.* Class 2 consists of all Secured Claims of Perkins State Bank. Perkins filed two (2) proofs of claims (Proofs of Claim Nos. 45 and 46) in the respective amounts of $618,568.68 and $64,834.64, plus interest and attorney's fees, asserting secured claims. The Purchaser shall assume any and all secured indebtedness due to Perkins as allowed by Final Order of the Bankruptcy Court (the "Perkins State Bank Claim"). The Perkins State Bank Claim shall be paid by the Purchaser in deferred Cash payments pursuant to the existing payments terms for the Perkins' loan documents commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than sixty (60) months from the Effective Date. Class 2 is Impaired by the Plan. Perkins is entitled to vote to accept or reject the Plan.

*Class 3:   Secured Tax Claims of Governmental Units.* Class 3 consists of all Secured Tax Claims of Governmental Units. Each Holder of an Allowed Secured Tax Claim shall be paid by the Purchaser in deferred equal monthly Cash payments commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than sixty (60) months from the Effective Date. Class 3 is Unimpaired by the Plan. Each Holder of a Class 3 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 4:   Secured Claims of Prepetition Lenders.* Class 4 consists of all of the Prepetition Lenders Claims. The Prepetition Lenders Claims shall be deemed reduced by the Credit Bid Amount, and the Prepetition Lenders have agreed in the event that Regional consummates a sale with the Debtor for substantially all of the Debtor's assets pursuant to order of the Bankruptcy Court that it shall receive no Distribution with respect to any remaining amount of the Prepetition Lenders Claims thereafter owing to the Prepetition Lenders. Accordingly, such remaining amount shall not be treated as a Class 6 Unsecured Claim. In the event a Purchaser, other than Regional, consummates a sale with the Debtor for substantially all of the Debtor's assets pursuant to order of the Bankruptcy Court, the Prepetition Lenders Claims shall be paid from the sale proceeds to be paid by such other Purchaser. Except as described in this Article 5.5, the Prepetition Lenders shall not be entitled to any Distribution under the Plan with respect to the Class 4 Claims. Class 4 is Unimpaired by the Plan. The Prepetition Lenders, as the Holder of the Class 4 Claims, conclusively are presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

*Class 5:   Other Secured Claims.* Class 5 consists of all Secured Claims not otherwise specifically classified in the Plan. Within ten (10) days following the Effective Date, the Holder of a Class 5 Secured Claim shall be satisfied either by: (a) the Debtor returning to the Secured Creditor any Property determined by the Bankruptcy Court to secure its Secured Claim in full satisfaction of such Secured Claim, or (b) the Purchaser shall pay the Allowed Amount of the Secured Claim in full within five (5) Business Day from the Effective Date in accordance with the terms of any agreement reached between the Secured Creditor and the Purchaser. Any deficiency owing to a Secured Creditor with respect to a Class 5 Claim shall be classified and treated as a Class 6 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court. Beckman Coulter, Inc. filed Claim No. 54 asserting a Secured Claim in the amount of approximately $48,500. The Debtor disputes that Beckman Coulter, Inc. has a valid lien on the Debtor's furniture, fixtures, accounts receivable and inventory, as Beckman's agreement with the Debtor, by its express terms, only permits a lien on the equipment provided by Beckman Coulter, Inc. to the Debtor. The Debtor scheduled Michele Borst Architect, P.A. in the amount of $4,770 and is in the process of reviewing this scheduled claim. Class 5 is Unimpaired by the Plan. Each Holder of a Class 5 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 6:  Unsecured Claims.*  Class 6 consists of all Unsecured Claims.  Under the Plan, each Holder of an Allowed Unsecured Claim in Class 6 shall receive such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount as set forth below in Class 6.

Unsecured Creditor Payments: Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the Unsecured Creditor Payments payable by quarterly payments over the course of three (3) years commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than thirty six (36) months from the Effective Date.  The Unsecured Creditor Payments will be payable from collection of the Excluded Accounts Receivables, but in the event an insufficient amount of Excluded Accounts Receivable has been collected by the due date of a quarterly payment, the Purchaser shall make the Unsecured Creditor Payment for that quarter.  To the extent collection of the Excluded Accounts Receivable exceeds One Hundred and Fifty Thousand Dollars ($150,000) (after repayment to the Purchaser for any Unsecured Creditor Payments which it has made), Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the the additional collected amounts from the Excluded Accounts Receivable.

Causes of Action Recoveries and Excluded Assets Recoveries:  In addition, Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of (i) any Causes of Action Recoveries and (ii) any Excluded Assets Recoveries, which are received by the Debtor.  Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of any Causes of Action Recoveries and any Excluded Assets Recoveries payable by quarterly payments over the course of three (3) years commencing on the fifth (5th) Business Day from the Effective Date.

Based on a review of the Proofs of Claim filed to date in the Bankruptcy Case as well as the Claims scheduled by the Debtor, Unsecured Claims total approximately $3,500,000. The timing and procedures for, and amount of, Distributions to Holders of Allowed Class 6 Claims shall be in accordance with Article 9 of the Plan and the Confirmation Order.  Class 6 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 6 is entitled to vote to accept or reject the Plan.

*Class 7:  Intercompany Claims.*  Class 7 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect. The Parent, as the Holder of the Class 7 Intercompany Claims, will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, the Debtor will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims.  Class 7 is Impaired by the Plan.  Pursuant to § 1126(g) of the Bankruptcy Code, Class 7 is deemed not to have accepted the Plan and,

thus, the Parent, as the Holder of the Class 7 Intercompany Claims, is not entitled to vote to accept or reject the Plan.

*Class 8: Equity Interests.* Class 8 consists of all Equity Interests. On the Effective Date, all of the Class 8 Equity Interests shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect. The Parent, as the Holder of the Class 8 Equity Interests, will not receive or retain any Property under the Plan on account of such Equity Interests. Accordingly, the Debtor will not make any Distribution or establish any reserve under the Plan for the Equity Interests. Class 8 is Impaired by the Plan. Pursuant to § 1126(g) of the Bankruptcy Code, Class 8 is deemed not to have accepted the Plan and, thus, the Parent, as the Holder of the Class 8 Equity Interests, is not entitled to vote to accept or reject the Plan.

**Effective Date**

*Condition Precedent to the Effective Date*

The Plan shall not be consummated and the Effective Date shall not occur unless the following condition has been satisfied following the Confirmation Date or waived by the Debtor: the Confirmation Order shall be a Final Order.

**Treatment of Executory Contracts and Unexpired Leases**

*Rejection of Executory Contracts and Unexpired Leases*

All executory contracts and unexpired leases that currently exist between the Debtor and another Person or Entity and that have not been expressly assumed or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "Rejected Contracts").

*Approval of Rejection of Executory Contracts and Unexpired Leases*

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Rejected Contracts pursuant to Article 7.1 of the Plan.

*Claims under Rejected Executory Contracts and Unexpired Leases*

Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor.  With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be the Voting Deadline.  The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.  All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6.  Any such Claims that become Disputed Claims shall be Disputed Claims in Class 6 for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in Class 6.

*Cure Claims*

Unless otherwise ordered by the Bankruptcy Court, no Cure Claims with respect to the Assumed Contracts shall be Allowed in the Bankruptcy Case.

**Causes of Action**

On the Effective Date, the Causes of Action shall be vested in the Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by an order of the Bankruptcy Court.  The Debtor will have the right, in its sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action, with any settlement to be subject to the approval of the Bankruptcy Court.  The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.  The Debtor will fund the costs and expenses (including legal fees) to pursue the Causes of Action to the extent of available funds.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action.  ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO

CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Debtor. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

The Bankruptcy Code gives a trustee or a debtor-in-possession the right to avoid and recover for the benefit of creditors in the bankruptcy case certain transfers that the debtor made prior to the bankruptcy filing. One such type of avoidance power is provided by the preference provisions of § 547 of the Bankruptcy Code. Under § 547(b) of the Bankruptcy Code, an avoidable preference is (1) a transfer, (2) of an interest of the debtor in property, (3) to or for the benefit of a creditor, (4) for or on account of antecedent debt, (5) made while the debtor was insolvent, (6) on or within ninety (90) days (one year for "insiders") before bankruptcy, and (7) that enables the creditor to receive more than it would have received in a Chapter 7 liquidation case if the transfer had not been made. The investigation as to these Causes of Action has not been completed and no decision has been made yet with respect to the pursuit thereof.

**Discharge, Exculpation from Liability and Injunction Provisions under the Plan**

Article 11 of the Plan contains detailed discharge, exculpation from liability, and injunction provisions for the benefit of the Debtor, the Debtor's Estate and other Persons.

20

In addition, the Plan provides for the complete and unconditional discharge, to the fullest extent permitted by law, of any and all Debts and Claims of any nature whatsoever against the Debtor and its Estate that arose on or before the Effective Date. Set forth below is a summary of these provisions.

*Discharge of Claims and Termination of Equity Interests*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate from any and all Debts of, Claims of any nature whatsoever against and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor, its successors or assigns, and its Estate shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, its successors or assigns, and its Estate, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or Equity Interests based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of cancelled Equity Interests shall have no rights arising from or relating to such Equity Interests, or the cancellation thereof. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against, or Equity Interests in, the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt or Equity Interest. Notwithstanding the foregoing, the Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

21

*Exculpation from Liability*

The Debtor and its Postpetition directors and officers and the Professionals for the Debtor (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted under Article 11.2 of the Plan are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of Article 11.2 of the Plan shall not release any of the Causes of Action.

*General Injunction*

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its Property or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Property or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or its Property or Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its Estate under the Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek

**enforcement of this general injunction provision.  This general injunction provision is an integral part of the Plan and is essential to its implementation.**

*Term of Certain Injunctions and Automatic Stay*

All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to §§ 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

*No Liability for Tax Claims*

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its directors, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

The foregoing is only a general summary of the discharge and injunction provisions of the Plan.  For a complete understanding of the terms and conditions of these essential Plan provisions, each holder of a Claim against or Equity Interest in the Debtor is encouraged to read Article 11 of the Plan in its entirety.  If you have any uncertainty regarding the scope of these discharge or injunction provisions, you should be aware that the language of the Plan controls over the language of the Disclosure Statement.

**Vesting of Assets in the Debtor**

On the Effective Date, except as otherwise expressly provided in the Plan and the Asset Purchase Agreement, all Property of the Estate (including the Causes of Action) shall vest in the Debtor free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide.  The Debtor intends to preserve net operating losses to the maximum extent permitted under applicable law.  All privileges with respect to the Property of the Debtor's Estate, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Debtor.

**Corporate Existence**

The Debtor will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law in the State of Florida and pursuant to its article of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

**Board of Directors and Executive Officers of the Debtor Following the Effective Date**

Subject to any requirement of Bankruptcy Court approval pursuant to § 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the directors of the Debtor immediately prior to the Effective Date shall be deemed to continue to be the directors of the Debtor without any further action by any party.  On and after the Effective Date, the operations of the Debtor shall continue to be the responsibility of its Board of Directors which is made up of Dr. Mohammad J. Tariq and Dr. Jalil Khan.  Neither Dr. Tariq or Dr. Khan will receive compensation for serving as directors.  Each director of the Debtor shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Debtor.  Each executive officer of the Debtor shall serve from and after the Effective Date until his or her successor is duly appointed and qualified or until his or her earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Debtor.

From and after the Confirmation Date, the Board of Directors and executive officers of the Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

To the extent that, as of the Effective Date, the Debtor has in place employment, indemnification and other agreements with its directors, officers and employees who will continue in such capacities after the Effective Date, such agreements shall remain in place after the Effective Date, and the Debtor will continue to honor such agreements.

**Corporate Action**

All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the directors of the Debtor.

**Selection, Duties and Compensation of the Liquidating Agent**

The Debtor may seek appointment of an agent with approval by the Bankruptcy Court to assist in (i) the receipt, management, supervision, and protection of the Excluded Assets on behalf of and for the benefit of the Creditors; (ii) the pursuit of objections to Claims and estimations and settlements of Disputed Claims; (iii) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Excluded Assets; (iv) the calculation and implementation of all distributions to be made under this Plan to Holders of Allowed Claims; (v) the disposing of any of the Excluded Assets; and (vi) such other responsibilities as may be necessary and proper to carry out the provisions of the Plan.

**Section 1146 Exemption**

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Assets or Property of, by or in the Debtor or the Estate pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Distributions under the Plan**

*In General*

Within the times provided elsewhere in the Plan, the Debtor or the Purchaser shall, or shall cause its agent to, make the Cash distributions required by the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 2, 3, 4, 5 and 6.

*Determination of Claims*

From and after the Effective Date, the Debtor shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of

executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than the Confirmation Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Debtor and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 5 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date sixty (60) days after the Debtor receives actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy

Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

*Distributions as to Allowed Claims in Class 6*

Each Holder of an Allowed Unsecured Claim in Class 6 shall receive, on the applicable Distribution Date (as determined by the Debtor in its sole discretion), a Cash Distribution in the amount of such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount. Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Claim. If, on any applicable Distribution Date, any Disputed Claims in Class 6 remain, then the Debtor shall withhold from any such Distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Class 6 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 6 Claim. At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan. Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a proceeding against it by the Debtor, the Debtor (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

A Distribution to a Holder of an Allowed Class 6 Claim shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor at the time of the Distribution, unless the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules. The Debtor shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided in the Plan.

**Retention of Jurisdiction**

The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Equity Interests and other issues presented by or arising under the Plan. The Bankruptcy Court will also retain jurisdiction under the Plan for any actions brought in connection with the implementation and consummation of the Plan and the transactions contemplated thereby. See Article 12 of the Plan for a more detailed description.

## HISTORY AND BUSINESS OF THE DEBTOR PRIOR TO THE CHAPTER 11 FILING; EVENTS LEADING TO THE CHAPTER 11 FILING

On October 5, 2012 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

The Debtor operates a 40-bed private hospital operating under the name of Tri County Hospital - Williston and located at 125 SW 7th Street in Williston, Florida (the "**Hospital**"). The real property is owned by the Debtor. The Hospital serves the populations of Levy, Gilchrist, Dixie and Marion Counties, Florida. The next closest hospitals to serve the populations in these geographic areas are located in Ocala and Gainesville and are approximately 22 to 27 miles away. The Hospital's services include short-term acute care, a 24-hour emergency room, a respiratory therapy department, and a community wellness outreach program. The Hospital also provides services to Medicaid and Medicare patients. Medicaid patients younger than 18 years of age are provided services with no charge and patients 18 years of age or older are provided services for a minimal charge.

The Debtor is a wholly-owned subsidiary of Mid Florida. The Debtor's annual gross revenues totaled approximately $11,627,000 for the year ending December 31, 2011. The Debtor's year-to-date gross revenues through May of 2012 are approximately $6,618,000.

Prior to the Petition Date, the Debtor experienced cash flow issues on account of interruption of reimbursements from Medicare and Medicaid due to a failure by an employee to file reports in a timely manner, upon discovery of which the Debtor terminated the employee. In addition, last month, Computer Programs & Systems, Inc. ("**CPSI**"), which provides software and support services to the Hospital for its accounting and financial systems and its patient billing ceased providing services to the Hospital, thus causing a cessation in the Hospital's billing. Dr. Mohammad J. Tariq and Dr. Jalil Khan loaned funds to the Debtor on a secured basis in the approximate aggregate principal amount of $378,800.00 from September 7, 2012 to October 5, 2012, during the time period that the collections had ceased. The Chapter 11 was filed in order to allow the Debtor an opportunity to explore a sale under §363 of the Bankruptcy Code.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**General**

The tax consequences of the Plan to Holders of Claims and Holders of Equity Interests (collectively, "Holders") are discussed below. This discussion of the federal

income tax consequences of the Plan to Holders under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "Tax Code"), is provided for informational purposes only.  While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties.  Moreover, the consequences to a Holder may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of persons, such as persons holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holder's particular tax situation.  In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

**HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTOR'S GENERAL BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.**

**SOME OF THE ISSUES DISCUSSED BELOW ARE COMPLEX, AND THERE CAN BE NO ASSURANCE OF THE ACCURACY OF THIS INFORMATION.**

**General Federal Income Tax Consequences to Holders**

*In General.*  The following discussion addresses certain of the material consequences of the Plan to Holders.  Under the Plan, the tax consequences of the Plan to a Holder will depend, in part, on the type of consideration received in exchange for the Claim or Equity Interest and the tax status of the Holder, such as whether the Holder is an individual, corporation or other entity, whether the Holder is a resident of the United States, the accounting method of the Holder, and the tax classification of the Holder's particular Claim or Equity Interest.  **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIM OR EQUITY INTEREST.**

**PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  THE DEBTOR MAKES THIS STATEMENT FOR THE SOLE PURPOSE OF ALERTING READERS TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO ANY TAX ISSUES THEY MAY WISH TO CONSIDER. THE DEBTOR CANNOT AND DOES NOT MANY ANY REPRESENTATIONSAS TO**

ANY TAX CONSEQUENCES AND SPECIFICALLY NOTES THAT, AMONG OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION SET FORTH IN THE PLAN OR OTHERWISE MIGHT BE.

## VOTING ON AND CONFIRMATION OF THE PLAN

### Confirmation and Acceptance by All Impaired Classes

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of Bankruptcy Code § 1129 are met. Among the requirements for confirmation of a plan are that the plan be accepted by all impaired classes of claims and equity interests, and satisfaction of the matters described below.

*Feasibility.* A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. The Debtor believes that it further financial reorganization will not be necessary.

The Plan basically provides for payments to Holders of Allowed Claims, including contingent, unliquidated and Disputed Claims to the extent they become Allowed Claims, in the order of their priority. The Plan contemplates that the Purchaser will assume those certain Claims of Creditors and will ensure with respect to Unsecured Creditors that an amounts of at least One Hundred and Fifty Thousand Dollars ($150,000) will be available for Allowed Unsecured Claims to be shared on a pro rata basis. Accordingly, the Debtor believes that the Plan is per se feasible.

The obligations under the Plan to Holders of contingent, unliquidated and Disputed Claims cannot be ascertained without the determination of the validity and amount of those Claims by the Bankruptcy Court. Until the Claim determination process is complete, the exact amount to be received by Unsecured Creditors cannot be ascertained.

*Best Interests Standard.* The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtor was liquidated under Chapter 7 on the same date. The Debtor believes that Distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7. See "ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN—Liquidation under Chapter 7 or Chapter 11."

**Confirmation Without Acceptance by All Impaired Classes**

If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

*Discriminate Unfairly.* The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

*Fair and Equitable Standard.* The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution. The Debtor believes the Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Class of Unsecured Claims, Bankruptcy Code § 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest. The Debtor believes that the Plan meets these standards.

Accordingly, if necessary, the Debtor believes that the Plan meets the requirements for Confirmation by the Bankruptcy Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Debtor intends to evaluate the results of the balloting and determine whether to seek Confirmation of the Plan in the event that less than all the Impaired Classes of Claims do not vote to accept the Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

**Absolute Priority Rule**

The Bankruptcy Code and other applicable law establish the priority for distribution of funds in bankruptcy cases. These priority provisions are sometimes referred to as the "absolute priority" rule. Normally, and subject to exceptions not

relevant here, valid secured claims are first paid to the extent of the amount of the claim or the value of the claimant's collateral (if less than the claim).

Any property in the bankruptcy estate, net of the valid secured claims described above, is first distributed to holders of priority claims, including (a) the costs of administering the bankruptcy case, including the cost of operating the Debtor's business during the Bankruptcy Case; (b) certain wage and benefit claims; and (c) certain tax claims. After payment of priority claims, unsecured creditors share pro rata in the remaining funds until paid in full. Equity holders (i.e., stockholders) are paid only after all creditors have been paid.

**Non-Confirmation of the Plan**

If the Plan is not confirmed by the Bankruptcy Court, the Court may permit the filing of an amended plan, dismiss the Bankruptcy Case, or convert the Bankruptcy Case to Chapter 7. In a Chapter 7 case, the Debtor's assets would be distributed to the Unsecured Creditors after the payment of all Secured Claims, costs of administration and the payment of priority claims.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11, (b) dismissal of the Bankruptcy Case, or (c) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

**Alternative Plans of Reorganization**

If the Plan is not confirmed, the Debtor or, subject to further determination by the Bankruptcy Court as to extensions of exclusivity under the Bankruptcy Code, any other party in interest in the Bankruptcy Case could attempt to formulate and propose a different plan or plans. The Debtor believes that the Plan will enable Creditors to be paid the maximum amount possible for their Allowed Claims.

**Liquidation under Chapter 7 or Chapter 11**

If a plan is not confirmed, the Bankruptcy Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the Creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional

administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) the inability to utilize the work product and knowledge of the Debtor and its Professionals; and (d) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims.  It is believed that liquidation under Chapter 7 will also reduce the amount to be realized by creditors as the Debtor's operations will cease.

In a liquidation under Chapter 11, the Debtor's assets would be liquidated in an orderly fashion over a more extended period of time than in liquidation under Chapter 7. The Debtor believes that the Plan is superior to liquidation under Chapter 7.  If necessary, the Debtor will present testimony at the Confirmation Hearing as to the liquidation value of its assets.

## SUMMARY, RECOMMENDATION AND CONCLUSION

The Debtor believes that its efforts to maximize the return for Creditors have been full and complete. The Debtor further believes that the Plan is in the best interests of all Creditors, even though Unsecured Creditors may not be paid in full. In the event of a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code, the Debtor believes there would be a lesser distribution to Unsecured Creditors. For these reasons, the Debtor believes that the Plan is in the best interests of all Creditors and urges that the Plan be accepted.

Tampa, Florida
Dated as of April 3, 2013

Respectfully submitted,

CYPRESS HEALTH SYSTEMS
FLORIDA, INC., d/b/a TRI COUNTY
HOSPITAL – WILLISTON, f/d/b/a
NATURE COAST REGIONAL
HOSPITAL

By: _____
Randy L. Lindauer, Chief Executive Officer


/s/ Elena P. Ketchum
_____
Elena P. Ketchum
Florida Bar No. 129267
Charles A. Postler
Florida Bar No. 455318
STICHTER, RIEDEL, BLAIN &
    PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 FAX
eketchum@srbp.com
cpostler@srbp.com
ATTORNEYS FOR DEBTOR