UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

                    Chapter 11

CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL –
WILLISON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

                    Case No. 1:12-bk-10431-KSJ

      Debtor.
_____/

# DEBTOR'S PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Elena Paras Ketchum (Florida Bar No. 0129267)
Charles A. Postler (Florida Bar No. 455318)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:    eketechum@srbp.com
                cpostler@srbp.com
Counsel for Debtor and Debtor in Possession

Tampa, Florida
Dated as of April 3, 2013

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN OF LIQUIDATION (THE "PLAN") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN CONDITIONALLY OR FINALLY APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF FLORIDA, GAINESVILLE DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTIES, AND OPERATIONS, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# ARTICLE 1
# INTRODUCTION

CYPRESS HEALTH SYSTEMS FLORIDA, INC., as Debtor and Debtor in Possession in the Bankruptcy Case, hereby proposes the following plan for the liquidation of the Debtor and the resolution of the outstanding Claims against and Equity Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**In summary, but subject to more specific details provided herein, the Plan provides for (i) the liquidation of the Debtor's assets after the Confirmation of the Plan and in accordance with a separate order of the Bankruptcy Court providing for the sale of substantially all of the Debtor's assets free and clear of liens, claims and encumbrances, except certain assumed liabilities, to Regional Health Partners, LLC or such other purchaser approved by the Bankruptcy Court; (ii) the assumption of certain liabilities of Creditors by the Purchaser; and (iii) the distribution of certain other assets (primarily consisting of the cash sum of $150,000.00) to the Holders of Allowed Unsecured Claims. All Creditors and other parties in interest are directed to review the Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets to Regional Health Partners, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines (the "Bid Procedures Motion") [Doc. No. 215]; the order of the Bankruptcy Court granting the Bid Procedures Motion (the "Bid Procedures Order"); and the Debtor's Motion for Order Authorizing the Sale of Substantially All of Its Assets to Regional Health Partners, LLC pursuant to 11 U.S.C. §363, Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion") [Doc. No. 225]. Each of the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.**

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtor's Disclosure Statement was conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, property, and operations, (b) a summary of the means of implementing and funding the Plan, and (c) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot, have been approved by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON

THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 13 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY THE DEBTOR. IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1   **Defined Terms**.

2.1.1         As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Accounts Receivable**" means all accounts and notes receivable of the Debtor existing at the Effective Time, including any accounts and notes receivable that have been charged off as bad debts, and any other evidence of indebtedness of and rights to receive payments from any Person arising from the rendering of services to patients at the hospital, billed and unbilled, recorded or unrecorded, with collection agencies or otherwise, accrued and existing in respect of services rendered up to the Closing.

4

"**Administrative Expense**" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include the DIP Loan Claims, any Priority Tax Claim, any Cure Claim, any Environmental Claim, any Disallowed Claim, any Claim of the Purchaser under the Asset Purchase Agreement, any Claim under any Assumed Contract for the period following the Closing, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 6. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor or any of its Property or the Estate, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

"**Affiliate**" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

5

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**Allowed Equity Interest**" means the Equity Interests in the Debtor owned by the Parent.

"**Asset Purchase Agreement**" or "**APA**" means the Asset Purchase Agreement by and between the Debtor, as Seller, and Regional Health Partners, LLC (or such other purchaser as approved by the Bankruptcy Court), as Purchaser, dated as of March 5, 2013, and as may be amended, modified or supplemented thereafter in accordance with its terms or pursuant to order of the Bankruptcy Court. As used in the Plan, the term "Asset Purchase Agreement" shall also include all schedules attached thereto. An executed copy of the Asset Purchase Agreement is on file with the Bankruptcy Court at Docket No. 215. In the event the Bankruptcy Court approves a purchaser other than Regional Health Partners, LLC, the term "Asset Purchase Agreement" or "APA" shall, as used in the Plan, mean that certain asset purchase agreement by and between the Debtor and such other purchaser approved by the Bankruptcy Court.

"**Assigned Causes of Action**" means Causes of Actions (i) with respect to or arising out of any contracts assumed by the Purchaser; and (ii) arising with respect to property, plant or equipment included in the assets being purchased pursuant to the APA, whether as a result of a warranty or otherwise.

"**Assumed Contracts**" means any unexpired leases of nonresidential real property and executory contracts assumed by the Debtor and assigned to the Purchaser at the Closing pursuant to the Asset Purchase Agreement and as set forth in Schedule 1 of the Asset Purchase Agreement. For purposes of the Plan, the term "Assumed Contracts" has the meaning ascribed to the term "Assumed Contracts" in the Asset Purchase Agreement.

"**Assumed Liabilities**" means those certain liabilities being assumed by the Purchaser pursuant to the Asset Purchase Agreement.

6

"**Avoidance Actions**" means any and all actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property, which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtor's Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

"**Ballot**" means the Ballot, accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Bankruptcy Case**" means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No. 1:12-bk-10431-KSJ.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Bankruptcy Counsel**" means Stichter, Riedel, Blain & Prosser, P. A.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Bar Date**" means February 1, 2013, the date set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtor in the Bankruptcy Case, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.3 of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)).

"**Cash**" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtor or its agent, as the case may be, drawn on a domestic bank.

"**Causes of Action**" means any and all of the Debtor's or the Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, including turnover actions and claims of the type referred to in the Disclosure Statement or in Article 8.10 of the Plan. The Causes of Action shall vest in the Debtor on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor pursuant to an order of the Bankruptcy Court. In addition, the term "Causes of Action" shall not include the Assigned Causes of Action (defined hereinabove). A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

"**Causes of Action Recoveries**" means the proceeds, benefits and other recoveries of any Causes of Action received by the Debtor.

"**Claim**" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims or Environmental Claim.

"**Class**" means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at the 110 East Park Avenue, Suite 100, Tallahassee, Florida 32301.

"**Closing**" means the consummation of the sale and purchase of the Purchased Assets and the other transactions contemplated by and described in the Asset Purchase Agreement.

"**Closing Date**" means the date of the Closing. The Closing shall be deemed to occur at 12:01 a.m., Eastern Standard Time, on the Closing Date (the "**Effective Time**").

"**Collateral**" means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"**Credit Bid Amount**" has the meaning ascribed to such term in Article 8.2 of the Plan.

"**Creditor**" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, and Priority Claims.

"**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtor and assignment to the Purchaser of any Assumed Contract. In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

"**Debt**" has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

"**Debtor**" means Cypress Health Systems Florida, Inc., a Florida corporation.

"**Debtor in Possession**" means Cypress Health Systems Florida, Inc., as debtor in possession in the Bankruptcy Case.

"**Determination Date**" means the later of (i) the Effective Date and (ii) the first Business Day after the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

9

"**DIP Advances**" means the aggregate outstanding Postpetition advances extended to the Debtor by the DIP Lender in accordance with and subject to the terms and conditions of the DIP Financing Order.

"**DIP Financing Order**" means, collectively, any and all orders entered by the Bankruptcy Court granting Debtor's Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001[Doc. No. 23] and Debtor's Second Emergency Motion for Authority to Obtain Postpetition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001[Doc. No. 48] (together, the "**DIP Motion**"), including, but not limited to the following: (i) the Interim Order Granting DIP Motion, dated November 20, 2012 [Doc. No. 102]; (ii) the Interim Order Granting DIP Motion dated November 20, 2012 [Doc. No. 103]; (iii) Second Interim Order Granting DIP Motion dated January 28, 2013 [Doc. No. 159]; (iv) Third Interim Order Granting DIP Motion dated February 4, 2013 [Doc. No. 176]; (v) Fourth Inteirm Order Granting DIP Motion dated February 8, 2013 [Doc. No. 186]; and (vi) Fifth Interim Order Granting DIP Motion dated March 27, 2013 [Doc. No. 230] .

"**DIP Lender**" means Regional Health Partners, LLC in its capacity as lender in accordance with and subject to the terms and conditions of the DIP Financing Order.

"**DIP Loan Claims**" means any and all Claims of the DIP Lender represented by, relating to, or arising under or in connection with the DIP Financing Order, whether Administrative Expense Claims or Secured Claims, including the DIP Advances and accrued and unpaid interest.

"**Disallowed Claim**" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

"**Disclosure Statement**" means the Disclosure Statement for Debtor's Plan of Liquidation under Chapter 11 of Title 11, United States Code, including all exhibits attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

"**Disclosure Statement Approval Order**" means the Order of the Bankruptcy Court conditionally approving the Disclosure Statement entered in the Bankruptcy Case.

"**Disputed Claim**" means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not

10

an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

"**Distribution**" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

"**Distribution Date**" means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals), means the date which is the earlier of (i) a Final Order allowing the Administrative Claim, (ii) the Confirmation Order, or (iii) in the normal course of business with respect to accounts payable, accrued, incurred or created in the operation of the hospital on and after the Petition Date and outstanding as of the Effective Time. "Distribution Date," when used with respect to an Allowed Priority Tax Claim, an Allowed Priority Claim, an Allowed Secured Claim, or an Allowed Unsecured Claim, means the date or dates for any Distribution to a Holder of an Allowed Priority Tax Claim, an Allowed Priority Claim, an Allowed Secured Claim, or an Allowed Unsecured Claim as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

"**Docket**" means the docket in the Bankruptcy Case maintained by the Clerk.

"**Effective Date**" means, and shall occur on, the first Business Day following the date on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan have been satisfied or waived by the Debtor.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Environmental Claim**" means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity) against the Debtor, its predecessors, successors or assigns, or Affiliates, or its present or former officers, directors, or employees, arising out of, or related to, any Environmental Laws or the Purchased Assets, including any Claim or demand: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy, any release, environmental pollution, contamination or nuisance or to require the Debtor to remedy or to reimburse, pay or incur costs to remedy any release, environmental pollution, contamination or nuisance, (b) to remedy, reimburse,

11

compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin, any violation of or alleged violation of any Environmental Laws, (c) to pay any contractual claim with respect to any Environmental Laws, or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Environmental Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g) (5) of the Bankruptcy Code.

"**Environmental Laws**" means all federal, state, local and foreign laws, statutes, ordinances, codes, rules, standards and regulations, now or hereafter in effect, and any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree, or judgment, imposing liability or standards of conduct for or relating to the regulation and protection of human health, safety, the environment and natural resources (including ambient air, surface water, groundwater, wetlands, land surface or subsurface strata, wildlife, aquatic species and vegetation). As used in this Plan, the term "Environmental Laws" shall include (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, et seq., (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, et seq., (c) the Clean Air Act, 42 U.S.C. §§ 7401, et seq., (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, et seq., (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., (f) the Oil Pollution Act of 1990 (OPA 90), (g) the Hazardous Materials Transportation Authorization Act of 1994, 49 U.S.C. §§ 5101, et seq., (h) the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136, et seq., (i) the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq., (j) the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq., (k) the Occupational Safety and Health Act, 29 U.S.C. §§ 651, et seq., (l) the Safe Drinking Water Act, 42 U.S.C. §§ 300(f), et seq., (m) all other statutes or laws issued or promulgated by any Governmental Unit, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, transportation, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials (including petroleum), including any transfer of ownership notification or approval statutes, and (n) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

"**Equity Interests**" means the equity interests in the Debtor held by the Parent.

"**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

12

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Excluded Accounts Receivables**" means all Accounts Receivable which became due prior to December, 2010.

"**Excluded Assets**" has the meaning ascribed to such term in the Asset Purchase Agreement.

"**Excluded Assets Recoveries**" means the proceeds, benefits and other recoveries from the Excluded Assets.

"**Exculpated Parties**" has the meaning ascribed to such term in Article 11.2 of the Plan.

"**Exhibit**" means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Decree Date**" means the date on which the Final Decree is entered on the Docket.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means April 30, 2013, the date established by Section 502(a)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been

13

filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest.

**"Impaired"** refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor or assign thereof, any assets of the Debtor , the business or operations of the Debtor, the Purchased Assets, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include (i) any obligation under the Purchase Agreement of one party thereunder to another party thereunder or (ii) any obligation of the Debtor expressly set forth in the Plan.

**"Lien"** means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

**"Local Rules"** means the Local Rules of the United States Bankruptcy Court for the Northern District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Parent"** means Mid Florida Healthcare Holdings, Inc., a corporation duly incorporated under the laws of the State of Florida.

**"Perkins"** means Perkins State Bank.

**"Perkins State Bank Claim"** has the meaning ascribed to such term in Article 5.3 of the Plan.

**"Person"** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

14

"**Petition Date**" means October 5, 2012, the date on which the Debtor commenced the Bankruptcy Case by filing its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means the Debtor's Plan of Liquidation under Chapter 11 of Title 11, United States Code, and all exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

"**Prepetition Lenders**" means together Dr. Mohammad J. Tariq and Dr. Jalil Khan.

"**Prepetition Lenders Claims**" means any and all Prepetition and Postpetition Secured Claims and other Claims including any Claim represented by, relating to, or arising under or in connection with the DIP Financing Order, including the DIP Loan Claims and any Unsecured Claim for any deficiency amount.

"**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

"**Priority Tax Claim**" means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

"**Professional**" means any professional employed in the Bankruptcy Case pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or 1103 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

"**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"**Pro Rata Share**" means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

15

"**Purchased Assets**" means those certain assets sold by the Debtor to the Purchaser in accordance with the Asset Purchase Agreement. For purposes of the Plan, the term "Purchased Assets" has the meaning ascribed to the term "Assets" in the Purchase Agreement.

"**Purchaser**" means Regional or such other purchaser of substantially all of the Debtor's assets pursuant to the APA as approved by the Bankruptcy Court.

"**Regional**" means Regional Health Partners, LLC.

"**Rejected Contracts**" has the meaning ascribed to such term in Article 7 of the Plan.

"**Reserved Claims**" means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless (a) a Proof of Claim was timely filed with respect to any such Claim, in which case in the face amount of such Proof of Claim, or (b) such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting and distribution purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

"**Sale Motion**" means Debtor's Motion for Order Authorizing the Sale of Substantially All of Its Assets to Regional Health Partners, LLC pursuant to 11 U.S.C. §363, Free and Clear of All Liens, Claims and Encumbrances [Doc. No. 225].

"**Sale Order**" means the Order granting the Sale Motion to be entered in the Bankruptcy Case by the Bankruptcy Court upon approval of the sale by the Bankruptcy Court.

"**Schedules**" means, collectively, the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as such schedules or statement have been or may be amended or supplemented from time to time.

"**Secured Claim**" means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

"**Secured Creditor**" means any Creditor holding a Secured Claim.

"**Superpriority Claim**" means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

"**Transferred Employees**" means an employee of the Debtor who accepts the Purchaser's offer of employment as set forth in Section 7.5 of the Asset Purchase Agreement.

"**Unimpaired**" refers to a Claim that is not Impaired.

"**United States**" means the United States of America.

"**United States Trustee**" means the Office of the United States Trustee for the Northern District of Florida.

"**Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, Secured Claim, or Intercompany Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Unsecured Creditor Payments**" means the amount of One Hundred and Fifty Thousand Dollars ($150,000.00) payable by quarterly payments over the course of three (3) years to Holders of Allowed Unsecured Claims. The Unsecured Creditor Payments will be payable from collection of the Excluded Accounts Receivables, but in the event an insufficient amount of Exluded Accounts Receivable has been collected by the due date of a quarterly payment, the Purchaser shall make the Unsecured Creditor Payment for that quarter. To the extent collection of the Excluded Accounts Receivable exceeds One Hundred and Fifty Thousand Dollars ($150,000) (after repayment to the Purchaser for any Unsecured Creditor Payments which it has made), the additional collected amounts will be paid to Holders of Allowed Unsecured Claims.

"**Unsecured Creditors Distribution Amount**" means collectively (i) the Unsecured Creditor Payments, (ii) any Causes of Action Recoveries, and (iii) any Excluded Assets Recoveries.

"**Voting Deadline**" means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

"**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

17

2.1.2        Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2      **Rules of Construction**.

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 3.

3.1      **Administrative Expense Claims**.

3.1.1    Except as otherwise provided in Articles 3.1.2 and 3.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid in full (a) on the Distribution Date, an amount, in Cash, by the Purchaser equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Purchaser, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

18

3.1.2   All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Purchaser by no later than thirty (30) days following the Effective Date.   Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Case shall be paid by the Purchaser, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code.   Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

3.1.3   All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case, including Assumed Liabilities, shall be paid by the Purchaser in the normal course of business.

3.2   **Priority Tax Claims**.

Each Holder of an Allowed Priority Tax Claim shall be paid by the Purchaser in deferred equal monthly Cash payments in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than sixty (60) months from the Effective Date.   Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law.   Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Purchaser.

## ARTICLE 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class.   For purposes of the Plan, the Claims and Equity Interests are classified as follows:

4.1   **Class 1:  Priority Claims**.

Class 1 consists of all Priority Claims.

19

4.2     **Class 2:  Secured Claims of Perkins State Bank**.

Class 2 consists of all Secured Claims of Perkins State Bank.

4.3     **Class 3:  Secured Tax Claims of Governmental Units**.

Class 3 consists of all Secured Tax Claims of Governmental Units.

4.4     **Class 4:  Secured Claims of Prepetition Lenders**.

Class 4 consists of the Prepetition Lenders Claims.

4.5     **Class 5:  Other Secured Claims.**

Class 5 consists of all other Secured Claims.

4.6     **Class 6:  Unsecured Claims**.

Class 6 consists of all Unsecured Claims.

4.7     **Class 7:  Intercompany Claims**.

Class 7 consists of all Intercompany Claims.

4.8     **Class 8:  Equity Interests**.

Class 8 consists of all Equity Interests.

## ARTICLE 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

5.1     **Unclassified Claims**.

Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2     **Class 1:  Priority Claims**.

20

Class 1 consists of all Priority Claims. Each Holder of an Allowed Priority Claim who is a Transferred Employee shall be paid by the Purchaser upon the earlier of (i) a Final Order as to such Allowed Priority Claim or (ii) entry of the Confirmation Order, an amount, in Cash, equal to the Allowed Amount of his or her Priority Claim in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code.

Class 1 is Unimpaired by the Plan. Each Holder of a Priority Claim in Class 1 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.3    **Class 2:  Secured Claims of Perkins State Bank**.

Class 2 consists of all Secured Claims of Perkins State Bank. Perkins filed two (2) proofs of claims (Proofs of Claim Nos. 45 and 46) in the respective amounts of $618,568.68 and $64,834.64, plus interest and attorney's fees, asserting secured claims. The Purchaser shall assume any and all secured indebtedness due to Perkins as allowed by Final Order of the Bankruptcy Court (the "Perkins State Bank Claim"). The Perkins State Bank Claim shall be paid by the Purchaser in deferred Cash payments pursuant to the existing payments terms for the Perkins' loan documents commencing on the fifth (5th) Business Day from the Effective Date  and to be paid in full no later than sixty (60) months from the Effective Date.

Class 2 is Impaired by the Plan. Perkins is entitled to vote to accept or reject the Plan.

5.4    **Class 3:  Secured Tax Claims of Governmental Units**.

Class 3 consists of all Secured Tax Claims of Governmental Units. Each Holder of an Allowed Secured Tax Claim shall be paid by the Purchaser in deferred equal monthly Cash payments commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than sixty (60) months from the Effective Date.

Class 3 is Unimpaired by the Plan. Each Holder of a Class 3 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.5    **Class 4:  Secured Claims of Prepetition Lenders**.

Class 4 consists of all of the Prepetition Lenders Claims. The Prepetition Lenders Claims shall be deemed reduced by the Credit Bid Amount, and the Prepetition Lenders have agreed in the event that Regional consummates a sale with the Debtor for substantially all of the Debtor's assets pursuant to order of the Bankruptcy Court that it shall receive no Distribution with respect to any remaining amount of the Prepetition Lenders Claims thereafter owing to the Prepetition Lenders. Accordingly, such remaining amount shall not be treated as a Class 6 Unsecured Claim. In the event a Purchaser, other than Regional, consummates a sale with the Debtor for substantially all of the Debtor's assets pursuant to order of the Bankruptcy Court, the Prepetition Lenders Claims shall be paid from the sale proceeds to be paid by such other Purchaser. Except as described in this Article 5.5, the Prepetition Lenders shall not be entitled to any Distribution under the Plan with respect to the Class 4 Claims.

Class 4 is Unimpaired by the Plan. The Prepetition Lenders, as the Holder of the Class 4 Claims, conclusively are presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

5.6    **Class 5:  Other Secured Claims**.

Class 5 consists of all Secured Claims not otherwise specifically classified in the Plan. Within ten (10) days following the Effective Date, the Holder of a Class 5 Secured Claim shall be satisfied by (a) the Debtor returning to the Secured Creditor any Property determined by the Bankruptcy Court to secure its Secured Claim in full satisfaction of such Secured Claim, or (b) the Purchaser shall pay the Allowed Amount of the Secured Claim as agreed to by the parties or determined by the Bankruptcy Court in full in accordance with the terms of any agreement reached between the Secured Creditor and the Purchaser or pursuant to order of the Bankruptcy Court. Any deficiency owing to a Secured Creditor with respect to a Class 5 Claim shall be classified and treated as a Class 6 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court.

Class 5 is Unimpaired by the Plan. Each Holder of a Class 5 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.7    **Class 6:  Unsecured Claims**.

Class 6 consists of all Unsecured Claims. Each Holder of an Allowed Unsecured Claim in Class 6 shall receive such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount as set forth below in Class 6.

*Unsecured Creditor Payments:*  Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the Unsecured Creditor Payments payable by quarterly payments over the course of three (3) years commencing on the fifth (5th) Business Day from the Effective Date and to be paid in full no later than thirty six (36) months from the Effective Date. The Unsecured Creditor Payments will be payable from collection of the Excluded Accounts Receivables, but in the event an insufficient amount of Excluded Accounts Receivable has been collected by the due date of a quarterly payment, the Purchaser shall make the Unsecured Creditor Payment for that quarter. To the extent collection of the Excluded Accounts Receivable exceeds One Hundred and Fifty Thousand Dollars ($150,000) (after repayment to the Purchaser for any Unsecured Creditor Payments which it has made), Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the the additional collected amounts from the Excluded Accounts Receivable.

*Causes of Action Recoveries and Excluded Assets Recoveries:*  In addition, Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of (i) any Causes of Action Recoveries and (ii) any Excluded Assets Recoveries, which are received by the Debtor. Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of any Causes of Action Recoveries and any Excluded Assets Recoveries payable by quarterly payments over the course of three (3) years commencing on the fifth (5th) Business Day from the Effective Date.

Class 6 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 6 is entitled to vote to accept or reject the Plan.

5.8    **Class 7: Intercompany Claims**.

Class 7 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect. The Parent, as the Holder of the Class 7 Intercompany Claims, will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, the Debtor will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims.

Class 7 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 7 is deemed not to have accepted the Plan and, thus, the Parent, as the Holder of the Class 7 Intercompany Claims, is not entitled to vote to accept or reject the Plan.

5.9    **Class 8: Equity Interests**.

Class 8 consists of all Equity Interests. On the Effective Date, all of the Class 8 Equity Interests shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect. The Parent, as the Holder of the Class 8 Equity Interests, will not receive or retain any Property under the Plan on account of such Equity Interests. Accordingly, the Debtor will not make any Distribution or establish any reserve under the Plan for the Equity Interests.

Class 8 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 8 is deemed not to have accepted the Plan and, thus, the Parent, as the Holder of the Class 8 Equity Interests, is not entitled to vote to accept or reject the Plan.

**ARTICLE 6**
**ACCEPTANCE OR REJECTION OF THE PLAN**

6.1    **Each Impaired Class Entitled to Vote Separately**.

Except as otherwise provided in Article 6.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

6.2    **Acceptance by Impaired Classes**.

Classes 2 and Class 6 are Impaired under the Plan, and Holders of Claims in such Class are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of

23

more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

6.3   **Presumed Acceptance of Plan by Unimpaired Classes**.

Classes 1, 3, 4 and 5 are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Classes and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4   **Deemed Non-Acceptance of Plan**.

Holders of Class 7 Intercompany Claims and Class 8 Equity Interests will not receive or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests and, therefore, Classes 7 and 8 are deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 7 Intercompany Claims and Class 8 Equity Interests are not being solicited by the Debtor.

6.5   **Impairment Controversies**.

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1   **Rejection of Executory Contracts and Unexpired Leases**.

All executory contracts and unexpired leases that currently exist between the Debtor and another Person or Entity and that have not been expressly assumed or rejected by the Purchaser with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date (collectively, the "Rejected Contracts").

7.2   **Approval of Rejection of Executory Contracts and Unexpired Leases**.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective

Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Rejected Contracts pursuant to Article 7.1 hereof.

7.3    **Claims under Rejected Executory Contracts and Unexpired Leases**.

7.3.1    Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be the Voting Deadline. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.3.2    All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6. Any such Claims that become Disputed Claims shall be Disputed Claims in Class 6 for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in Class 6.

7.4    **Cure Claims**.

Unless otherwise ordered by the Bankruptcy Court, no Cure Claims with respect to the Assumed Contracts shall be Allowed in the Bankruptcy Case.

## ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1    **General Overview of the Plan**.

On the Closing Date, substantially all of the Debtor's assets will be sold to the Purchaser. Thus, the Plan provides for the liquidation of substantially all of the Debtor's assets and for the assumption by the Purchaser of certain liabilities and for the distribution of certain other assets to Creditors.

With respect to Allowed Unsecured Claims, the Holders of such claims will receive on a quarterly basis for three (3) years such Holder's Pro Rata Share of the Unsecured Creditor Payments in the total amount of $150,000.000, which amount shall be paid by the Purchaser in the event the quarterly payments are not able to be made from Excluded Accounts Receivable. To the extent collection of the Excluded Accounts Receivable exceeds One Hundred and Fifty Thousand Dollars ($150,000) (after repayment to the Purchaser for any Unsecured Creditor Payments which it has made), Holders of Allowed Unsecured Claims shall receive such Holder's Pro Rata Share of the additional collected amounts from the Excluded Accounts Receivable. In addition, Holders of

Allowed Unsecured Claims will receive on a pro rata basis any amounts realized from Cause of Action Recoveries or Excluded Asset Recoveries. At the present time, the Debtor is unable to predict with certainty the ultimate amount of the Cause of Action Recoveries or Excluded Assets Recoveries.

As of the Effective Date, all of the Class 7 Intercompany Claims and the Class 8 Equity Interests will automatically be deemed cancelled, annulled, and extinguished without any further action by any party and will be of no further force and effect. The Parent, as the Holder of the Class 7 Intercompany Claims and the Class 8 Equity Interests, will not receive any Distribution or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests.

8.2    **Sale of Debtor's Assets Pursuant to the Asset Purchase Agreement**.

On March 5, 2013, the Debtor and Regional entered into the Asset Purchase Agreement. In the Asset Purchase Agreement, the Debtor agreed to sell to the Purchaser, and the Purchaser agreed to purchase from the Debtor, substantially all of the assets of the Debtor pursuant to and in accordance with Sections 363 and 365 of the Bankruptcy Code free and clear of any and all Liens, excepting certain Assumed Liabilities.

All Creditors and other parties in interest are directed to review the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion, which may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.

Pursuant to the Bid Procedures Motion and the Bid Procedures Order, the Bankruptcy Court has established bidding procedures in connection with the sale by the Debtor of substantially all of its assets. The deadline by which any competing bids are to be submitted to the Debtor and its counsel is May 8, 2013 (the "Bid Deadline"). If competing bids are received by the Bid Deadline, an auction to determine the best and highest offer for the Debtor's assets will be held on May 14, 2013 (the "Auction") at the offices of Stichter, Riedel, Blain & Prosser, P.A. at 110 E. Madison Street, Suite 200, Tampa, Florida 33602.

As noted above, the Debtor has filed its Sale Motion with the Bankruptcy Court. The Debtor will be requesting the Bankruptcy Court to enter a Sale Order and approve (i) the execution and delivery by the Debtor of the Asset Purchase Agreement, and (ii) the sale and purchase of the Debtor's assets and the other transactions contemplated by the Asset Purchase Agreement. The Closing under the Asset Purchase Agreement is contemplated to occur in conjunction with confirmation of the Plan. A hearing on the Sale Motion shall be held before the Honorable Karen S. Jennemann at U.S. Courthouse, George C. Young Federal Building, 400 West Washington Street, Sixth Floor, Orlando, Florida 32801 on May 15, 2013 at 1:00 p.m. (the "Sale Hearing").

As set forth in the Asset Purchase Agreement, the consideration to be paid by the Purchaser to Debtor for the Purchased Assets shall be the sum determined as of the Closing Date consisting of the following items (collectively, the "Purchase Price"): (i) by credit against amounts owing to Purchaser with respect to the Prepetition Lenders Claims (the "Credit Bid Amount"); (ii) the assumption and/or payment of the Perkins State Bank Claim; (iii) the assumption and/or payment of the Allowed

Priority Tax Claims; (iv) the payment of Allowed Administrative Claims; (v) the assumption and/or payment of the other Assumed Liabilities set forth in Section 2.3 of the Asset Purchase Agreement; and (vi) $150,000.00 payable to the holders of Allowed Unsecured Claims against the Debtor in the Bankruptcy Case by quarterly payments over the course of three (3) years. A spreadsheet outlining the approximate dollar value for the components of the Purchase Price is attached to the Bid Procedures Order.

As noted above, the Debtor is seeking through the sale process to sell substantially all of its assets free and clear of liens, claims, and encumbrances, excepting certain liabilities being assumed by the Purchaser. The Debtor has been advised that Tony Pfaff and Kim Bird assert they have a valid second mortgage against the real property of the Debtor. The Debtor disputes the validity of the asserted second mortgage and intends to object to their right to assert any claim against the Debtor and its Estate or any mortgage or lien against the Debtor, its real property or its assets. Neither Kim Byrd nor Tony Pfaff filed proofs of claims by the Bar Date.

The above is a brief summary of the material terms of the Asset Purchase Agreement, the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion and holders of Claims and Equity Interests are encouraged to read the Asset Purchase Agreement, the Bid Procedures Motion, the Bid Procedures Order and the Sale Motion in their entirety for a more detailed description. Each of these documents may be reviewed by visiting the website of Debtor's counsel at www.srbp.com.

### 8.3    **Vesting of Property of the Estate in the Debtor**.

On the Effective Date, except as otherwise expressly provided in the Plan and the Asset Purchase Agreement, all Property of the Estate (including the Causes of Action) shall vest in the Debtor free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide. The Debtor intends to preserve net operating losses to the maximum extent permitted under applicable law. All privileges with respect to the Property of the Debtor's Estate, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Debtor.

### 8.4    **Corporate Existence**.

The Debtor will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law in the State of Florida and pursuant to its article of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

### 8.5    **Board of Directors and Executive Officers of the Debtor Following the Effective Date**.

8.5.1    Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the executive officers and directors of the Debtor immediately prior to the Effective Date shall be deemed to continue to be the executive officers and directors of the Debtor without any further action by any party.

8.5.2    On and after the Effective Date, the operations of the Debtor shall continue to be the responsibility of its Board of Directors, which is made up of Dr. Mohammad J. Tariq and Dr. Jalil Khan.  Each director of the Debtor shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Debtor.  Each executive officer of the Debtor shall serve from and after the Effective Date until his or her successor is duly appointed and qualified or until his or her earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Debtor.

8.5.3    From and after the Confirmation Date, the Board of Directors and executive officers of the Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.5.4    To the extent that, as of the Effective Date, the Debtor has in place employment, indemnification and other agreements with its directors, officers and employees who will continue in such capacities after the Effective Date, such agreements shall remain in place after the Effective Date, and the Debtor will continue to honor such agreements.

8.6    **Corporate Action**.

All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the sole stockholder or directors of the Debtor.

8.7    **Selection, Duties and Compensation of the Liquidating Agent**.

The Debtor may seek appointment of an agent with approval by the Bankruptcy Court to assist in (i) the receipt, management, supervision, and protection of the Excluded Assets on behalf of and for the benefit of the Creditors; (ii) the pursuit of objections to Claims and estimations and settlements of Disputed Claims; (iii) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Excluded Assets; (iv) the calculation and implementation of all distributions to be made under this Plan to Holders of Allowed Claims; (v) the disposing of any of the Excluded Assets; and (vi) such other responsibilities as may be necessary and proper to carry out the provisions of the Plan.

8.8    **Section 1146 Exemption**.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor or its Estate pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax,

28

Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.9    **Effectuating Documents; Further Transactions**.

The president of the Debtor or any other person designated by the Board of Directors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

8.10    **Pursuit of Causes of Action**.

8.10.1  On the Effective Date, the Causes of Action shall be vested in the Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by an order of the Bankruptcy Court. The Debtor will have the right, in its sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action, with any settlement to be subject to the approval of the Bankruptcy Court. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Debtor will fund the costs and expenses (including legal fees) to pursue the Causes of Action to the extent of any available funds.

8.10.2 No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Debtor. A Cause of Action shall not, under

29

any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

8.10.3  The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

8.10.4  The Debtor will evaluate the benefit to Unsecured Creditors, as a whole, before pursuing any Causes of Action. The Debtor reserves the right to pursue the Causes of Action in its sole discretion.

8.10.5  The Debtor reserves all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

8.11    **Exclusivity Period.**

The Debtor will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1    **Cash Distributions.**

Within the times provided elsewhere in the Plan, the Debtor or the Purchaser shall, or shall cause its agent to, make the Cash distributions required by the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Claims in Classes 2, 3, 4, 5 and 6.

9.2    **Determination of Claims.**

9.2.1    From and after the Effective Date, the Debtor shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than the Confirmation Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor), and the Confirmation Order shall contain appropriate language to that effect. Holders of

Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Debtor and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 6 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date sixty (60) days after the Debtor receives actual notice of the filing of such Claim.

9.2.2 Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.2.3 Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

## 9.3    **Distributions as to Allowed Claims in Class 6**.

9.3.1 Each Holder of an Allowed Unsecured Claim in Class 6 shall receive, on the applicable Distribution Date (as determined by the Debtor in its sole discretion), a Cash Distribution in the amount of such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount.

9.3.2    Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Claim. If, on any applicable Distribution Date, any Disputed Claims in Class 6 remain, then the Debtor shall withhold from any such Distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Class 6 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 6 Claim. At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

9.3.3    Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a proceeding against it by the Debtor, the Debtor (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

9.3.4    A Distribution to a Holder of an Allowed Class 6 Claim shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor at the time of the Distribution, unless the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules. The Debtor shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

9.4    **Unclaimed Distributions**.

9.4.1    If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within thirty (30) days of the date such check was issued, then the Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.2    If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Debtor as to such check within thirty (30) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.3    Any unclaimed Distribution as described above sent by the Debtor shall become the property of the Debtor.

9.5    **Transfer of Claim**.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Debtor in writing of such transfer and provide sufficient written evidence of such transfer. The Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Debtor shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

9.6    **One Distribution Per Holder**.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

9.7    **Effect of Pre-Confirmation Distributions**.

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor to such Holder under the Plan.

9.8    **No Interest on Claims**.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

9.9    **Compliance with Tax Requirements**.

In connection with the Plan, the Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE 10
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

### 10.1   Condition Precedent to Confirmation of the Plan.

The following is a condition precedent to Confirmation of the Plan, which condition may be waived by the Debtor:

10.1.1  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

### 10.2   Condition Precedent to the Effective Date.

The Plan shall not be consummated and the Effective Date shall not occur unless the following condition has been satisfied following the Confirmation Date or waived by the Debtor:

10.2.1  The Confirmation Order shall be a Final Order.

## ARTICLE 11
## DISCHARGE, EXCULPATION FROM LIABILITY, AND GENERAL INJUNCTION

### 11.1   Discharge of Claims and Termination of Equity Interests.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate from any and all Debts of, Claims of any nature whatsoever against and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor, its successors or assigns, and its Estate shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, its successors or assigns, and its Estate, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or Equity Interests based upon any act, omission, document,

34

instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of cancelled Equity Interests shall have no rights arising from or relating to such Equity Interests, or the cancellation thereof. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against, or Equity Interests in, the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt or Equity Interest. Notwithstanding the foregoing, the Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

11.2    **Exculpation from Liability**.

The Debtor and its Postpetition directors and officers and the Professionals for the Debtor (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.2 shall not release any of the Causes of Action.

11.3    **General Injunction**.

**Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its Property or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Property or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or its Property or Estate; (d) asserting a setoff, right**

**of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its Estate under the Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.**

11.4    **Term of Certain Injunctions and Automatic Stay**.

All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.5    **No Liability for Tax Claims**.

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its directors, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

**ARTICLE 12**
**RETENTION OF JURISDICTION**

12.1    **General Retention**.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

12.2    **Specific Purposes**.

In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

12.2.1          to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of

any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

12.2.2    to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Case, the Plan or the Confirmation Order (including regarding the effect of any discharge, exculpation, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

12.2.3    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor;

12.2.4    to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof;

12.2.5    to determine any and all motions, applications, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor commenced in connection with, or arising during, the Bankruptcy Case and pending on the Effective Date, including approval of proposed settlements thereof;

12.2.6    to enforce, interpret and administer the terms and provisions of the Plan;

12.2.7    to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

12.2.8    to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or the Estate;

12.2.9    to assure the performance by the Debtor of its obligations under the Plan;

12.2.10    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

12.2.11    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

37

12.2.12    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.2.13    to review and approve any sale or transfer of assets or Property by the Debtor, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers, including any disputes with respect to the Purchase Agreement;

12.2.14    to determine all questions and disputes regarding title to the assets of the Debtor or the Estate;

12.2.15    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

12.2.16    to resolve any determinations which may be requested by the Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

12.2.17    to resolve any disputes concerning any exculpation of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

12.2.18    to determine any and all matters, disputes and proceedings relating to the Causes of Action, whether arising before or after the Effective Date;

12.2.19    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.2.20    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.2.21    to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, or the Confirmation Order;

12.2.22    to enter such orders as are necessary to implement and enforce the injunctions described herein;

12.2.23    to enforce the obligations of any purchaser of any assets of the Debtor;

12.2.24    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

38

12.2.25      to determine any and all matters, disputes and proceedings relating to the Asset Purchase Agreement, whether arising before or after the Effective Date; and

12.2.26      to enter an order concluding and terminating the Bankruptcy Case.

## 12.3    **Closing of the Bankruptcy Case**.

In addition to the retention of jurisdiction set forth in Articles 12.1 and 12.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed.

# ARTICLE 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

### 13.1    **Modification of Plan**.

13.1.1      The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

13.1.2      After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

13.1.3      After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims actually voting in each Class adversely affected by such modification; and (d) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

13.1.4      Notwithstanding anything to the contrary contained in this Article 13.1 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor.

### 13.2    **Confirmation Over Objections**.

In the event any Impaired Class of Claims votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 14.2, the Debtor hereby requests, and shall be allowed, to

modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1   **No Admissions**.

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

14.2   **Revocation or Withdrawal of the Plan**.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

14.3   **Standard for Approval of the Bankruptcy Court**.

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

14.4   **Further Assurances**.

The Debtor agrees, and is hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

14.5    **Headings.**

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

14.6    **Notices.**

All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor, c/o Charles A. Postler, Esq. and Elena Paras Ketchum, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 Madison Street, Suite 200, Tampa, Florida 33602.

14.7    **Governing Law**.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

14.8    **Limitation on Allowance.**

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

14.9    **Estimated Claims**.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

14.10    **Consent to Jurisdiction**.

Upon any default under the Plan, the Debtor consents to the jurisdiction of the Bankruptcy Court and agrees that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the

Debtor, the Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 of the Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

14.11  **Setoffs**.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against the Holder of such Claim.

14.12  **Successors and Assigns**.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

14.13  **Modification of Payment Terms**.

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

14.14  **Entire Agreement**.

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

14.15  **Severability of Plan Provisions**.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

14.16  **Confirmation Order and Plan Control**.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement. The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

14.17  **Computation of Time**.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

14.18  **Substantial Consummation**.

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Debtor of the Distributions described in Article 9.1 of the Plan.

14.19  **No Liability for Solicitation**.

Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

[Signature Page Follows]

Tampa, Florida
Dated as of April 3, 2013

Respectfully submitted,

CYPRESS HEALTH SYSTEMS FLORIDA, INC.,
d/b/a TRI COUNTY HOSPITAL – WILLISTON,
f/d/b/a NATURE COAST REGIONAL HOSPITAL

By: _____
Randy L. Lindauer, Chief Executive Officer

/s/ Elena Paras Ketchum
Elena Paras Ketchum (Florida Bar No. 0129267)
Charles A. Postler (Florida Bar No. 455318)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:     (813) 229-0144
Facsimile:     (813) 229-1811
Email:         eketchum@srbp.com
               cpostler@srbp.com
Counsel for Debtor and Debtor in Possession