UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL –
WILLISON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

Debtor.
_____/

Chapter 11

Case No. 1:12-bk-10431-KKS

**NOTICE OF FILING SECOND REPORT OF PATIENT CARE OMBUDSMAN**

Debtor, CYPRESS HEALTH SYSTEMS FLORIDA, INC., by and through its undersigned attorneys, hereby gives notice of the filing with this Court of the Second Report of Patient Care Ombudsman.

DATED: May 14, 2013

/s/ Elena Paras Ketchum
Elena Paras Ketchum
Florida Bar No. 0129267
STICHTER, RIEDEL, BLAIN &
 PROSSER, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
eketchum@srbp.com
(813) 229-0144
(813) 229-1811 FAX
ATTORNEYS FOR DEBTOR

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the NOTICE OF FILING SECOND REPORT OF PATIENT CARE OMBUDSMAN has been furnished to the Court's CM/ECF electronic mail system to the Office of the U.S. Trustee and all other parties receiving electronic noticing in this case on this **14th** day of **May, 2013**.

                                                /s/ Elena Paras Ketchum
                                                Elena Paras Ketchum
                                                Florida Bar No. 0129267

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | : | **CASE NO. 12-10431-KKS** |
| | : | |
| CYPRESS HEALTH SYSTEMS FLORIDA, INC. | : | CHAPTER 11 |
| | : | |
| DEBTOR. | : | |

### NOTICE OF FORTHCOMING REPORT OF PATIENT CARE OMBUDSMAN PURSUANT TO BANKRUPTCY RULE 2015.1(a)

**COMES NOW** the duly appointed Patient Care Ombudsman in this case, J. Michael Weathers (the "Ombudsman"), and respectfully files this NOTICE pursuant to Bankruptcy Rule 2015.1(a). In accordance with 11 U.S.C. § 333(b)(2), the Ombudsman intends to file a written report with the Court no later than close of business on May 15, 2013. A copy of the Ombudsman's Report may then be obtained from the Ombudsman at the following address:

J. Michael Weathers
207 Longview Dr.
Norcross, GA 30071-2127
Telephone: 404-431-0195
mikewxs@comcast.net
This 13th day of May 2013.
Respectfully submitted,

/s/ Michael Weathers
J. Michael Weathers
Patient Care Ombudsman
PLEASE ADDRESS ALL
COMMUNICATIONS TO:
J. Michael Weathers
207 Longview Dr.
Norcross, GA 30071-2127
Tel: 404-431-0195

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

IN RE: : CASE NO. 12-10431-KKS
:
CYPRESS HEALTH SYSTEMS : CHAPTER 11
FLORIDA, INC. :
:
DEBTOR. :
:

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice has been served by regular U.S. Mail, postage prepaid to the following:

Cypress Health Systems Florida, Inc.
125 SW 7th ST
Williston, FL

Elena Ketchum, Esq.
Stichter, Riedel, Blain & Prosser, PA
110 E Madison ST, STE 200

And to other parties in interest that are listed in the Court's electronic mailing matrix, by Notice of Electronic Filing which will be sent by the CM/ECF system through the Clerk of Court.

The Notice has been or will be posted by the Ombudsman in a prominent place in the above listed facility. A copy of this notice shall be given to each current in-patient who did not see the posted notice at the time of their admission.

This 13th day of May 2013.

*/s/ Michael Weathers*
J. Michael Weathers
207 Longview Dr.
Norcross, GA 30071-2127
Telephone: (404) 431-0195

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA,
INC., d/b/a TRI COUNTY HOSPITAL –
WILLISTON, f/d/b/a NATURE COAST
REGIONAL HOSPITAL,

Debtor.

Chapter 11

Case No. 1:12-bk-10431-KKS

_____/

## SECOND 60 DAY REPORT OF PATIENT CARE OMBUDSMAN

I, J. Michael Weathers the duly appointed Patient Care Ombudsman in this case, file this Patient Care Ombudsman report pursuant to 11 U.S.C. § 333(b)(2).

### 1. Introduction

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") requires the Court to consider authorizing the appointment of a Patient Care Ombudsman whenever a "health care business" (as that term is defined by BAPCPA) files for bankruptcy protection. The act recognizes that at times the interests of the creditors and those of patients in a healthcare setting may be in opposition. The Patient Care Ombudsman's role is to monitor the debtor in possession and to report to the Court any actions or decisions which may adversely impact the quality of patient care. In my capacity as PCO, I made in person visits to Tri County Hospital on February 20 and March 27, 2013. Further, I researched the facility's recent compliance records on the State of Florida Agency for Health Care Administration (AHCA) web portal.

### II. Funding and Occupancy

Records at the Florida Secretary of State indicate Cypress Health Systems Florida, Inc. is a for profit corporation. Its Chief Executive Officer is Manoj K. Prasad, MD, MBA, PhD, FACHE. Discussions with Dr. Prasad during each visit indicated that the facility has debtor in possession financing adequate to meet payroll and other operating needs. Additionally, some back wages were being paid to employees which had greatly improved morale.

Average Daily Occupancy continued to be between 8 and 12 patients per day. Dr. Prasad indicated that a higher occupancy would overtax the staff.

DIP financing continues to be provided by investors from Texas who desire to purchase the facility. Funding was reported to be adequate to keep vendors paid within terms.

During the February 20 visit, I was told that the CMS Change of Ownership (CHOW) was in process. On the March 26 visit, I was advised that the CHOW had been approved and the sale of the facility should happen within 60 days.

### III. History of Regulatory and Quality Problems

Since my January visit, Florida's Agency for Healthcare Administration (AHCA) which regulates licensure of hospitals, had made several unannounced inspection visits. No deficiencies were noted. During the February visit the CEO reported that a risk manager had been contracted to provide services to the hospital clearing one of the more difficult deficiencies.

### IV. Facility Tour

Doing business as Tri-County Hospital, the facility draws from a service area with a population of approximately 16,000. The campus consists of a clinic building and hospital building. The hospital facility itself is a single story building approximately 47 years old. The lobby of the hospital served as the patient registration point for the hospital and clinic.

The Clinic is a Federally Qualified Rural Healthcare Clinic. This designation provides some additional funding in the form of cost based reimbursement. The clinic building has been closed and the clinic now operates from room within the hospital.

It was noted that the closed circuit television cameras had been installed and were monitored from the CEO's office. The cameras were operational during each of the monthly visits and it was reported that supply losses had decreased and employees felt safer knowing that the doors were monitored.

The facility has 2 operating suites which for lack of a surgeon remain closed and have not been used for years. There are no immediate prospects for recruiting a surgeon.

The facility operates a level 1 emergency room consisting of 3 bays staffed by contracted physicians on a 24 hour per day basis. The ER treats about 20 patients per day. Dr, Prasad had implemented measures to provide additional patient privacy in the area and insisted that privacy curtains be used to screen patients from each other's view.

Dr. Prasad reported that one ER physician had been terminated and a patient complaint was being resolved.

Diagnostic imaging is available with a digital X-ray machine. X-rays are interpreted by a radiologist using tele-medicine. The hospital has an old but functioning CT scanner. Dr. Prasad indicated that he is in discussions with a mobile MRI company to provide MRI services 2 days per week at the hospital.

During the January visit, Dr. Prasad had indicated that he would like to install PYXIS machines to control the dispensing of medications when the pharmacist was not available. Realistically, that installation will have to wait until the bankruptcy is resolved since the company is not willing to lease to them at the present time.

Routine laboratory is done in house. Laboratory tests beyond the capability of the facility are outsourced to Quest. I received no complaints from either Nursing or Laboratory personnel regarding a lack of reagents or lab supplies.

## V. Staffing

Staffing levels at the Facility among administrative and direct-care staff are stable. In January, the CEO indicated that a search was underway to fill the position of risk manager and to add a nursing unit secretary to augment the record keeping done by nursing personnel. Both had been accomplished by the February visit.

However, it was reported that the Nursing director was leaving her position. Friction with the medical staff was reported to be the reason.

## VI. Medical Care, Records, and Supplies

Medical records are stored in a secure area of the hospital. Confidentiality of records appears maintained. There are no problems with patients receiving copies of their records in a timely manner if they are needed by other providers.

## VII. Vendor Relationships

My interviews with the CEO and Nursing Director indicate that vendor relationships are stable. Dr. Prasad indicated that a review of their insurance had disclosed that the hospital had been without property damage and professional liability coverage. He also noted that the hospital had been visited by the Internal Revenue Service and that they were in the process of filing several quarters of delinquent tax reports.

### VIII. Ombudsman Visits and Complaint Activity

I have not received any complaints directly from physicians, hospital staff members, family members or patients.

### IX. Miscellaneous

During my visit of March 27 I learned that day was to be Manaj Prasad's last day as CEO. It appears that the bankruptcy will move forward to the sale in open court in the near future. I met his replacement, Mr. Randy Lindauer. I wish to thank Dr. Prasad for his cooperation and the candid discussions we had regarding the hospital and its future. If the services of a PCO continue to be needed, I look forward to working with Mr. Lindauer and his staff.

DATED: May 13, 2013

Respectfully submitted,

*J. Michael Weathers*
J. Michael Weathers
Patient Care Ombudsman