UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

CYPRESS HEALTH SYSTEMS FLORIDA, INC., d/b/a TRI COUNTY HOSPITAL – WILLISTON, f/d/b/a NATURE COAST REGIONAL HOSPITAL,

    Debtor.
_____/

CYPRESS HEALTH SYSTEMS FLORIDA, INC., d/b/a TRI COUNTY HOSPITAL – WILLISTON, f/d/b/a NATURE COAST REGIONAL HOSPITAL,

    Plaintiff,

  v.

KIM B. BIRD; and TONY L. PFAFF,

    Defendants.
_____/

Chapter 11

Case No. 1:12-bk-10431-KSJ

Adv. Pro. No. 1:13-ap-____-KSJ

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT
TRANSFER, TO PRESERVE AVOIDED LIENS FOR THE BENEFIT
OF THE ESTATE, AND SEEKING DECLARATORY RELIEF**

CYPRESS HEALTH SYSTEMS FLORIDA, INC., as debtor and debtor in possession (the "**Debtor**" or "**Plaintiff**"), by and through its undersigned attorneys, hereby files this Adversary Complaint against Kim B. Bird ("**Bird**") and Tony L. Pfaff ("**Pfaff**") (each a "**Defendant**" and together, "**Defendants**") and alleges as follows:

## A. Jurisdiction, Venue, and Parties

1. This is an adversary proceeding as defined by Fed.R.Bankr.P. 7001. The Court has exclusive jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (H), (N) and (O); 11 U.S.C. §§ 363, 544, 548, and 550; and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

3. Plaintiff is a Florida corporation and the debtor in possession in the above-referenced chapter 11 case.

4. Defendant Bird is an individual residing in Idaho.

5. Defendant Pfaff is an individual residing in Montana.

## B. General Background

6. On October 5, 2012 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

7. The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

8. The Debtor operates a 40-bed private hospital operating under the name of Tri County Hospital - Williston and located at 125 SW 7th Street in Williston, Florida (the "**Hospital**"). The Hospital serves the populations of Levy, Gilchrist, Dixie and Marion Counties, Florida. The Hospital's services include short-term acute care, a 24-hour emergency room, a respiratory therapy department, and a community wellness outreach program. The Hospital also provides services to Medicaid and Medicare patients. Medicaid patients younger than 18 years of age are provided services with no charge and

patients 18 years of age or older are provided services for a minimal charge. The Debtor is a wholly-owned subsidiary of Mid Florida Healthcare Holdings, Inc., a Florida corporation.

9. No trustee or examiner has been appointed in this case.

### C. Sale of Debtor's Assets Pursuant to the Asset Purchase Agreement

10. On March 5, 2013, the Debtor and Regional Health Partners, LLC ("**Regional**") entered into an asset purchase agreement (the "**Asset Purchase Agreement**"). In the Asset Purchase Agreement, the Debtor agreed to sell to Regional, and Regional agreed to purchase from the Debtor, substantially all of the assets of the Debtor pursuant to and in accordance with §§ 363 and 365 of the Bankruptcy Code free and clear of any and all Liens, excepting certain Assumed Liabilities.

11. On March 7, 2013, the Debtor filed its Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of its Assets to Regional Health Partners, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines (the "**Bid Procedures Motion**") (Doc. No. 215).

12. On March 21, 2013, the Debtor filed its Motion for Order Authorizing the Sale of Substantially All of Its Assets to Regional Health Partners, LLC pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances (the "**Sale Motion**") (Doc. No. 225) with the Bankruptcy Court.

13. As set forth in the Asset Purchase Agreement, the consideration to be paid by Regional to the Debtor for the Purchased Assets shall be the sum determined as of the Closing Date consisting of the following items (collectively, the "**Purchase Price**"): (i) by credit against amounts owing to Regional with respect to the Prepetition Lenders Claims (the "**Credit Bid Amount**"); (ii) the assumption and/or payment of the Perkins State Bank Claim; (iii) the assumption and/or payment of the Allowed Priority Tax Claims; (iv) the payment of Allowed Administrative Claims; (v) the assumption and/or payment of the other Assumed Liabilities set forth in Section 2.3 of the Asset Purchase Agreement; and (vi) $150,000.00 payable to the holders of Allowed Unsecured Claims against the Debtor in the Bankruptcy Case by quarterly payments over the course of three (3) years.

14. As noted above, the Debtor is seeking through the sale process to sell substantially all of its assets free and clear of liens, claims, and encumbrances, excepting certain liabilities being assumed by the Purchaser. The Debtor has been advised that Tony Pfaff ("**Pfaff**") and Kim Bird ("**Bird**") assert they have a valid second mortgage against the real property of the Debtor. The Debtor disputes the validity of the asserted second mortgage and files this complaint.

### D. Allegations

15. The Debtor has filed its Plan of Liquidation under Chapter 11 of Title 11, United States Code (the "**Plan**") (Doc. No. 242) incorporating the Asset Purchase Agreement and the Sale Motion.

16. At all times relevant hereto, the Debtor was and remains a wholly-owned subsidiary of Mid Florida Healthcare Holdings, Inc., a Florida corporation ("**Mid Florida**").

17. Pursuant to that certain Stock Purchase and Sale Agreement dated June 4, 2010, Pfaff and Bird sold their stock in the Debtor (the "**Stock Sale**") to Mid Florida Healthcare Holdings, Inc., for which Jerry E. Gillman served as President.

18. The Debtor did not receive any funds at closing of the Stock Sale. No obligations of the Debtor were satisfied or reduced as part of the Stock Sale. The Debtor did not receive any consideration in connection with the Stock Sale.

19. In connection with the Stock Sale, Mid Florida was caused to execute two promissory notes (each, a "**Promissory Note**", and together, the "**Promissory Notes**"), each in the amount of $1,203,730.50, one payable to Defendant Bird, and one payable to Defendant Pfaff.

20. At or about the time of the Stock Sale, the Debtor, as mortgagor, was caused to execute that certain Mortgage, dated as of September 15, 2010 (the "**Second Mortgage**"), in favor of the Defendants, as mortgagee. A copy of the Mortgage is attached hereto as **Exhibit "1"** and incorporated herein by reference. The Second Mortgage was recorded in the real property records for Levy County, Florida on December 1, 2010, Instrument No. 546909, OR Book 1217, Page 838.

21. The Second Mortgage was executed by Jerry E. Gillman, as chief executive officer of the Debtor.

22.     The Second Mortgage encumbered real property located at 125 SW 7th Street, Williston, Levy County, Florida, and is legally described as reflect in the legal description attached as Exhibit A to the Second Mortgage.

23.     Other than those alleged under and in connection with the Second Mortgage, Defendant Bird and Defendant Pfaff do not assert any other liens against the Debtor or its assets.

24.     The Second Mortgage is junior to that certain mortgage in favor of Drummond Community Bank f/k/a Perkins State Bank ("**Perkins Bank**"), dated September 29, 2008, recorded in the public records of Levy County, Florida in OR Book 1140, Page 237.

25.     Immediately prior to the Stock Sale and the execution of the Second Mortgage, Defendant Bird was president and the registered agent of the Debtor, and Defendant Pfaff was an executive officer of the Debtor.  *See* 2010 Annual Report filed June 23, 2010; 2010 Amended Annual Report filed September 21, 2010.

26.     The Debtor listed Defendants as the holders of contingent, disputed claims on its Schedule D.  (Bankr. Doc. No. 58).  Neither of the Defendants filed a proof of claim in the Bankruptcy Case.

27.     The Debtor was not a maker on the Promissory Notes.  The Debtor did not execute a guaranty of the Promissory Notes.

28.     The Debtor did not receive reasonably equivalent value in exchange for the granting of the Second Mortgage.

29. Defendants knew or should have known that the Debtor received no benefit in exchange for the granting of the Second Mortgage.

30. The Second Mortgage was not given to satisfy any antecedent or other debt of the Debtor to Defendants.

31. Upon information and belief, Mid Florida may assert, due to breaches by the Defendants of various agreements executed in connection with the Stock Sale, certain claims, defenses, and setoffs owed by the seller to the buyer in connection with the Stock Sale in excess of the amounts outstanding under the Promissory Notes.

32. The Debtor was insolvent or became insolvent on account of the transactions consummated pursuant to the Stock Sale.

33. All conditions precedent to the institution of this action have been performed, have occurred, have been waived or have otherwise been excused.

**COUNT I**
**AVOIDANCE OF FRAUDULENT TRANSFERS AND OBLIGATIONS AND RECOVERY OR PRESERVATION OF LIENS FOR BENEFIT OF THE ESTATE**

34. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 32.

35. This is an action to avoid fraudulent transfers made and fraudulent obligations incurred by the Debtor pursuant to 11 U.S.C. § 548(a)(1)(B) and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes.

36. Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, the Plaintiff, as debtor in possession, may avoid any transfer of an interest of the debtor in property, or any obligation incurred by a debtor, that was made or

incurred on or within 2 years (under § 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

37. Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under §§ 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the Plaintiff may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

38. The execution and recording of the Second Mortgage by the Debtor to the Defendants constitutes a transfer of an interest in property of the Debtor, or an obligation incurred by the Debtor, to the Defendants within two years (under § 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

39. At or near the time of the execution and recording of the Second Mortgage by the Debtor to the Defendants, the Debtor was insolvent or became insolvent on account of the transfer or obligation and could not pay its debts as they became due.

40. In addition, the Debtor did not receive reasonably equivalent value for the execution and recording of the Second Mortgage by the Debtor to the Defendants and (i) was insolvent at the time the transfer was made or the obligation incurred or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

41. As a result of the above, the Plaintiff can avoid the Second Mortgage pursuant to §§ 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, and preserve or recover the value thereof for the benefit of the Debtor's estate pursuant to § 550 of the Bankruptcy Code.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in favor of the Plaintiff and against Defendants determining that the recording of the Second Mortgage is avoidable as a fraudulent transfer or obligation, avoiding any interests of claims under the Second Mortgage, awarding attorneys' fees, court costs and/or interest; and granting such other and further relief as may be just and proper.

## COUNT II
## DETERMINE VALUE OF PROPERTY
## AND SECURED STATUS OF DEFENDANTS

42. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 32.

43. The Debtor has filed its Plan, which treats secured claims as required by the Bankruptcy Code, and the Sale Motion. The Debtor needs this Court to fix the value of the Real Property, in order to determine the amounts of any secured claim of the Defendants.

44. The Defendants did not timely file an unsecured claim, and any unsecured claim asserted by the Defendants against the Debtor is barred.

WHEREFORE, the Debtor respectfully requests the Court to enter a judgment, determining the value of the Real Property for purpose of confirmation of the Plan and the Sale Motion, disallowing any claim to the extent such claim exceeds the value of the interest in the Real Property and for such other purposes necessary in this case, and for such other and further relief as may be just.

## COUNT III
## EXTENT OF LIEN

45. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 32.

46. The Debtor, as debtor and debtor-in-possession, has the powers of a lien creditor under § 544 of the Bankruptcy Code.

47. Defendants do not have a valid lien on any personal property assets of the Debtor, including the personal property assets to be sold under the Asset Purchase Agreement.

48. To the extent that Defendants assert a lien on the personal property assets of the Debtor, such lien is unperfected and subject to avoidance.

WHEREFORE, the Debtor respectfully requests the Court enter a judgment (i) determining that Defendants do not have a valid, perfected, lien in any of the personal property assets of the Debtor; (ii) avoiding for the benefit of the estate any unperfected liens; and (iii) for such other and further relief as may be just.

## COUNT IV
## 11 U.S.C. § 363(f)

49. Plaintiff realleges and incorporates by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 32.

50. The Sale Motion provides for the sale of the Assets under the Asset Purchase Agreement, free and clear of any liens, claims, and encumbrances, except for the Assumed Liabilities.

51. Any liens, claims, and encumbrances of the Defendants are not Assumed Liabilities.

52. Pursuant to § 363(f), the Court may order a sale free and clear of any interest if any one of the subsections is met.

53. The Second Mortgage is the subject of a bona fide dispute.

54. The Defendants could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Specifically, in either a state law foreclosure

action filed by Perkins Bank, or under 11 U.S.C. § 1129(b) and the Plan, the Defendants could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of the Second Mortgage.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in favor of the Plaintiff and against Defendants (i) declaring that the sale under the Sale Motion and the Plan is free and clear of the Second Mortgage and any interest of the Defendants and (ii) for such other and further relief as may be just.

DATED:  May 15, 2013

/s/ Elena Paras Ketchum
Elena Paras Ketchum
Florida Bar No. 0129267
Charles A. Postler
Florida Bar No. 455318
STICHTER, RIEDEL, BLAIN &
  PROSSER, P.A.
110 Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 FAX
ATTORNEYS FOR DEBTOR
eketchum@srbp.com
cpostler@srbp.com

Prepared by and return to:
James C. Rowe, Esquire
147 2nd Avenue So., Suite 400
St. Petersburg, FL 33701

Instrument # 546909
OR BK 1217 Pages 838-4pg(s)
RECORDED 12/01/2010 at 10:53 AM
Danny J. Shipp, Levy County Clerk, Florida
MTG Doc: $8426.26 INT TAX: $4814.92
DEPUTY CLERK MB

## MORTGAGE

THIS MORTGAGE made this 15th day of September 2010, by and between Cypress Health Systems Florida, Inc., a Florida corporation, whose address is 125 SW 7th Street, Williston, Florida 32696, hereinafter referred to as "Mortgagor," and Kim B. Bird, 850 Emory Lane, Idaho Falls, Idaho 83401, and Tony L. Pfaff, 791 Eastside Road, Deer Lodge, Montana 59722, hereinafter referred to collectively as "Mortgagee;"

### WITNESSETH

Mortgagor, in consideration of the aggregate sums named in the Promissory Notes hereinafter described, does hereby grant, bargain, sell, convey, mortgage and encumber unto Mortgagee the following property situate in Levy County, Florida:

Legal Description: See Exhibit A attached hereto and made a part hereof,

together with all appurtenances, privileges, rights, interest, dower, reversions, remainders and easements thereunto appertaining, and the rents, incomes, issues, profits and revenues thereof, and also all improvements and fixtures, now on or in, or hereafter placed thereon or therein; all of which will hereinafter be referred to as "mortgaged property."

The mortgaged property does not constitute homestead property of the Mortgagor.

The Mortgage conveyed herein shall be a second mortgage, inferior to that certain mortgage executed by Mortgagor in favor of Perkins State Bank and dated September 29, 2008, which mortgage is recorded in the public records of Levy County, Florida in Official Records Book 1140, Page 237 (hereinafter referred to as "First Mortgage").

PROVIDED ALWAYS, that if Mortgagor and/or Mid-Florida Healthcare Holdings, Inc., a Florida corporation and the parent company of Mortgagor, shall promptly pay to Mortgagee on those certain Promissory Notes in favor of each individual Mortgagee, and which Promissory Notes contain cross default language and are cross collateralized by this Mortgage, and each of those Promissory Notes being in the principal amount of ONE MILLION TWO HUNDRED THREE THOUSAND SEVEN HUNDRED-THIRTY and 50/100 DOLLARS ($1,203,730.50), and if Mortgagor shall faithfully and promptly comply with and perform each and every covenant and provision hereof, then this Mortgage shall be void, but otherwise shall remain in full force and effect.

AND MORTGAGOR does hereby covenant and agree as follows:

1. That Mortgagor is the owner of the mortgaged property with full power and right to mortgage same, and said property is free from all liens and encumbrances except ad valorem taxes and non-ad valorem assessments and as otherwise set forth herein. Mortgagor does hereby fully warrant the title to said property and will defend it against the lawful claims of all persons whomsoever.

2. To pay the sums of money agreed by this Mortgage and said Note (as defined in Paragraph 10 of this Mortgage) to be paid and any extensions or renewals thereof according to the true effect and meaning thereof and in conformity with all of the terms, provisions and conditions as agreed therein.

MORTGAGE BY CYPRESS HEALTH SYSTEMS FLORIDA, INC.

PAGE 1 OF 4

# EXHIBIT 1

3. To pay all taxes, assessments, levies, liabilities, liens, obligations and encumbrances of every kind and nature on the mortgaged property before delinquency. Additionally, to keep the mortgaged property insured against loss of damage by fire, and all perils insured against by a standard extended coverage endorsement.

4. That Mortgagor shall be in default under this Mortgage upon the happening of any of the following events or conditions: (a) failure or omission to pay before delinquency the said Note (or any installment thereof or interest thereon); (b) default in the payment of performance of any obligations, covenant, agreement or liability contained or referred to herein; (c) any advance under the First Mortgage that would cause the principal balance thereof to exceed $1,500,000; or (d) the institution of foreclosure proceedings by the holder of the First Mortgage, or the default of any term or condition of the First Mortgage, which default remains uncured after all applicable curative periods as set forth in said First Mortgage, subject to Mortgagor's good faith basis of dispute over any alleged default as may be asserted by the holder of the First Mortgage. Upon the occurrence of any such default or at any time thereafter, Mortgagee may, at the option of Mortgagee, declare the whole amount of principal and interest provided for in and by the Note secured hereby, immediately due and payable without demand or notice of any kind to any person, and the same thereupon shall become immediately due, payable and collectible (by foreclosure or otherwise) at once and without notice to Mortgagor.

5. To pay, in the event of a default under the terms of this Mortgage or the Note which it secures, or any renewals or extensions thereof, all costs, expenses or reasonable attorneys' fees incurred in the collection hereof (whether by suit or otherwise), including those costs, expenses and reasonable attorneys' fees incurred in appellate proceedings.

6. Mortgagor agrees that no waiver by Mortgagee of any default shall operate as a waiver of any other default or of the same default on a future occasion; that the exchange, release, surrender or sale of all or any real property or collateral which may be given or may have been given to secure the repayment of the Note and other obligations secured hereby shall not release or discharge any Mortgagor or other party liable hereunder.

7. That if Mortgagor defaults in any of the covenants or agreements contained herein or in said Note, Mortgagee may perform the same or procure their performance without waiving or affecting the option to foreclosure or any right hereunder, and all payments and expenditures (including reasonable attorneys' fees as herein provided) made by Mortgagee in so doing shall be charged to Mortgagor shall become immediately due and payable, shall bear interest at the highest rate allowed by law and together with interest and costs accrued thereon, shall be added to and become part of the obligations which this Mortgage secures.

8. By acceptance of this Mortgage and the Note referenced herein, Mortgagee agrees, on the condition that at no time shall the principal balance of the First Mortgage exceed $1,500,000, to subordinate the lien created on the mortgaged property by this instrument, upon written request by Mortgagor, with respect to any security, lien, collateralization or mortgage granted by Mortgagor to any lender with respect to loans, credit or refinance obtained by Mortgagor associated with or arising out of the operations of the hospital and related medical facilities undertaken on the mortgaged property including, but not limited to (i) the refinance of the First Mortgage, (ii) the financing for the acquisition of necessary equipment and fixtures utilized in the operations undertaken at the mortgaged property, (iii) the borrowing for funds used in the expansion of the facilities located on the mortgaged property, (iv) borrowing of additional funds necessary for the remodeling, reconstructing, or adding to the existing improvements located at the mortgaged property, or , (v) such other necessary financing obtained by Mortgagor with respect to necessary capital improvements (as such term is commonly referred to under Generally Accepted Accounting Principles) or necessary capital items with respect to the operations undertaken by Mortgagor at the mortgaged property. It is the intent of Mortgagor and Mortgagee that this Mortgage be subordinate and inferior to not only the First Mortgage but any refinance associated therewith and such other obligations Mortgagor may incur as part of the ongoing operations to not only preserve the facilities being conducted on the mortgaged property, but to also improve and expand upon the same. Mortgagee shall, upon written request, execute such necessary and appropriate subordination documents to evidence the agreement contained herein, provided, however, all costs associated with such documentation, including but not limited to Mortgagee's reasonable attorneys' fees with respect to the review and advice associated with such documentation, shall be the responsibility of Mortgagor. In the event Mortgagee fails to comply with the terms of this Paragraph 8 of this Mortgage, Mortgagor shall be entitled to enforce compliance in an action for a specific performance, and to be awarded in such action all costs, expenses and reasonable attorneys' fees incurred therein.

9. Mortgagor waives all rights of homestead and other exemptions granted by the constitution and laws of Florida. The terms "Mortgagor" and "Mortgagee" as used herein shall include their respective heirs, devisees, personal representatives, grantees, successors and assigns. Whenever used, the singular number shall include the

plural, the plural number shall include the singular, and the use of any gender shall include all genders. The term "Note" as used herein shall include each of the Promissory Notes which this Mortgage secures.

10. This Mortgage and the Note secured hereby shall be construed under Florida law.

IN WITNESS WHEREOF, Mortgagor has signed and sealed this Mortgage the date above written.

CYPRESS HEALTH SYSTEMS FLORIDA, INC.

By: _____
Print Name: Jerry E. Gillman
Title: Chief Executive Officer

In the presence of:

Print Name: Ronald L. Stephenson

Print Name: Lee Hartzog

STATE OF FLORIDA )
COUNTY OF PINELLAS )

The foregoing instrument was acknowledged before me this 15th day of September 2010 by JERYY E. GILLMAN, as Chief Executive Officer of CYPRESS HEALTH SYSTEMS FLORIDA, INC., a Florida corporation, on behalf of the corporation. He [✓] is personally known to me or [__] has produced _____ as identification.

_____
(SIGNATURE)

_____
(NAME - TYPED OR PRINTED)
Notary Public

(SEAL)
My Commission Expires:

SONYA V. BENJAMIN
Notary Public - State of Florida
My Comm. Expires Jul 2, 2013
Commission # DD 890352
Bonded Through National Notary Assn.

## EXHIBIT A
## LEGAL DESCRIPTION

Attached to second mortgage by and between Cypress Health Systems Florida, Inc. as "Mortgagor," and Kim B. Bird and Tony L. Pfaff together as "Mortgagee."

A tract of land in the Southwest 1/4 of the Northwest 1/4 of Section 6, Township 13 South, Range 19 East, in the City of Williston, being a portion of that parcel described in Deed Book 90, page 590 of the public records of Levy County, Florida and being more particularly described as follows:

For a point of reference commence at the Southwest corner of Southwest 1/4 of the Northwest 1/4 of Section 6, Township 13 South, Range 19 East; run thence North, along the West boundary of said Southwest 1/4 of the Northwest 1/4, a distance of 1043.30 feet to a point in the Southerly right of way line of Church Avenue; run thence North 79 deg. 57 min. 52 sec. East, along said right of way line, a distance of 58.19 feet to a point in the Easterly right of way line of US Highway No. 41 to establish the Point of Beginning; from said Point of Beginning run thence North 79 deg. 57 min. 52 sec. East, along said Southerly right of way line of Church Avenue a distance of 570.34 feet; run thence South parallel to said West boundary of said Southwest 1/4 of the Northwest 1/4 a distance of 814.89 feet; run thence North 87 deg. 49 min. 25 sec. West, 571.10 feet to a point in the Easterly right of way line of US Highway 41; run thence North 00 deg. 45 min. 24 sec. East, along the Easterly right of way line of US Highway No. 41, a distance of 693.67 feet to the Point of Beginning.

Less and Except the East 140 feet thereof; and Less and Except the South 50 feet for road right of way; and Less and Except the following described parcel:

For a point of reference commence at the Southwest corner of the Southwest 1/4 of the Northwest 1/4 of Section 6, Township 13 South, Range 19 East; run thence North, along the West boundary of said Southwest 1/4 of the Northwest 1/4 a distance of 1043.30 feet to a point in the Southerly right of way line of Church Avenue; run thence North 79 deg. 57 min. 52 sec. East, along said right of way line, a distance of 191.92 feet to the Point of Beginning; thence continue North 79 deg. 57 min. 59 sec. east, 213.74 feet; thence South 00 deg. 03 min. 51 sec. East, 77.27 feet; thence South 85 deg. 38 min. 40 sec. West, 211.59 feet; thence North 00 deg. 25 min. 49 sec. East, 56.09 feet to close on the Point of Beginning.