UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
www.flnb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| CYPRESS HEALTH SYSTEMS ) | Case No. 1:12-bk-10431-KSJ |
| FLORIDA, INC., d/b/a TRI COUNTY ) | Chapter 11 |
| HOSPITAL-WILLISTON, f/d/b/a ) | |
| NATURE COAST REGIONAL ) | |
| HOSPITAL, ) | |
| ) | |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION GRANTING DEBTOR'S
MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE**

In 2009, Partner's Healthcare Development International, LLC ("Partner's Healthcare") signed a Letter of Intent (the "LOI")[1] and paid a $50,000 deposit to Tampa Title Company ("Tampa Title") in an attempt to purchase assets of the Debtor, Cypress Health Systems Florida, Inc. The sale never closed, and Tampa Title is still holding the monies. Debtor now asks for the turnover of the monies.[2] Partner's Healthcare objects[3] arguing the monies are not property of the estate, the Debtor is not entitled to the monies, and that the state court should resolve the dispute. The Court overrules this objection, grants the Debtor's motion, and directs Tampa Title to release the escrow funds to the Debtor.

On August 13, 2009, Debtor entered into the LOI with Partner's Healthcare to buy its primary asset—the Tri-County Hospital-Williston f/k/a Nature Coast Regional Hospital. On

---

[1] Doc. No. 674.
[2] Doc. No. 674.
[3] Doc. No. 688. See also, Doc. Nos. 690, 692, and 697.

August 18, 2009, Partner's Healthcare timely paid to Tampa Title the $50,000 escrow deposit[4] as required in paragraph 3 of the LOI:

> Within Thirty (30) Days of the last Party to execute this Offer [August 13, 2009], Buyer [Partner's Healthcare] shall deposit or see deposited into the Escrow or Trust Account of the Seller's [Debtor's] choice, the sum of fifty thousand ($50,000.00) dollars, as a sum which would revert permanently to the possession and control of the Seller should a purchase by Buyer not be consummated subsequent to loan approval within the Ninety (90) Day Exclusivity Period. This sum ($50,000.00) shall be refunded subsequent to the successful close of the acquisition of the assets of Nature Coast Regional Hospital by PHD International, LLC.

The 90 day exclusivity period expired on November 11, 2009. The sale never closed. Tampa Title is still holding the escrowed funds.

Debtor filed this Chapter 11 case on October 5, 2012.[5] Partner's Healthcare was listed as a creditor and received both notice of the bankruptcy filing and the deadline to file claims of February 1, 2013.[6] Partner's Healthcare never filed a claim seeking the return of the escrow deposit. Debtor confirmed its liquidating plan[7] on June 14, 2013,[8] and now asks Tampa Title to release the $50,000 to pay claims as required by the confirmed plan.

Partner's Healthcare first objects contending the $50,000 escrowed funds are not property of the Debtor's estate. Tampa Title, as a third party, disinterested stakeholder, takes no position but requests a court order directing who should receive the funds.

Under § 541 of the Bankruptcy Code,[9] "property of the estate" is defined as all of a debtor's legal or equitable interests in property, wherever located, as of the commencement of the case. Bankruptcy courts have the jurisdiction to determine whether an interest, like the escrow

---

[4] Check number 1004 issued by an agent of Partner's Healthcare—Ph.D. International LLC.
[5] Doc. No. 1.
[6] Doc. No. 22.
[7] Doc. No. 242.
[8] Confirmation Order, Doc. No. 347.
[9] The Bankruptcy Code refers to 11 U.S.C. §§101 *et seq*.

deposit, is property of the estate.[10] For the Debtor's turnover motion to succeed, the escrow deposit must be property of the estate.[11]

Partner's Healthcare argues that, because the Debtor failed to schedule the $50,000 escrow deposit in its bankruptcy schedules the Debtor has no legal or equitable interest in the funds. Nothing in § 541 or elsewhere in the Bankruptcy Code limits property of the estate to property *scheduled* by a debtor."[12] The absence of the escrow deposit on the Debtor's schedules does not preclude the later inclusion of the monies as property of the Debtor's estate.

Partner's Healthcare next asserts that, because it has a claim that the Debtor failed to negotiate the sale in good faith, the Debtor did not have the right to the escrow deposit at the time of the bankruptcy filing. State law determines whether the debtor has an equitable or legal interest in the property at the time of filing.[13] A bankruptcy estate cannot succeed to a greater interest in property than a debtor holds prior to bankruptcy.[14] Under the LOI and the governing escrow agreements generally,[15] a grantor retains legal interests in escrowed funds if it may

---

[10] *In re Ascher*, 128 B.R. 639, 642 – 643 (Bankr. N.D. Ill. 1991). 28 U.S.C. §157 divides the bankruptcy court's jurisdiction into "core" and "non-core" proceedings. In core proceedings the bankruptcy court wields traditional adjudicative powers while in non-core proceedings it has only the power to hear the dispute and "submit 'proposed findings of facts and conclusions of law to the district court.'" *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 103 (Bankr. D. Del. 2008) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir. 1999)). Generally, a core proceeding is one that involves a right created by bankruptcy law or an issue that arises only in bankruptcy. "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. Fla. 1999) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir.1987)).
[11] 11 U.S.C. § 542.
[12] *Samson v. Western Capital Partner's, LLC (In re Blixseth)*, 454 B.R. 92, 97-98 (B.A.P. 9th Cir. 2011) (internal citations omitted).
[13] State law determines the extent and validity of a debtor's interest in property. *In re Scanlon*, 239 F.3d 1195, 1197-98 (11th Cir. 2001); *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979).
[14] 11 U.S.C. § 541(d); *Butner*, 440 U.S. 48, 99 S. Ct. 914.
[15] *In re Cedar Rapids Meats, Inc.*, 121 B.R. 562, 567 (Bankr. N.D. Iowa 1990) (citing *In re Sun*, 116 B.R. 767, 771 (Bankr. D. Haw. 1990)).

unwind a transaction and recover the escrowed funds.[16] Funds in escrow do not become property of a grantee until they are irretrievably placed beyond the grantor's reach.[17] "Under Florida law, legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement,"[18] here, the LOI.

Under the LOI, the escrow deposit reverts "permanently to the possession and control of the Seller [the Debtor] should a purchase by Buyer [Partner's Healthcare] not be consummated subsequent to loan approval within the Ninety (90) Day Exclusivity Period."  No exclusions or equivocations are contained in the LOI. The parties further made this provision binding in paragraph 9 of the LOI.  The exclusivity period expired on November 11, 2009.  No sale occurred.  Thus, under the clear and unambiguous terms of the LOI, Partner's Healthcare irretrievably lost any interest in the escrow deposit on November 11, 2009.  The Debtor was and is entitled to the funds.

In its objection, Partner's Healthcare contends that, because the Debtor arguably did not negotiate the sale in good faith, a factual issue exists as to whether the Debtor now is entitled to the escrow deposit.  Partner's Healthcare raised this issue pre-petition by sending a letter to Tampa Title, dated October 8, 2010, directing them to hold the escrow deposit until a court order directed the release of the monies.[19] Partner's Healthcare took no action for years until it raised a

---

[16] *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC)*, 472 B.R. 582, 646-647 (Bankr. M.D. Fla. 2012) (Jennemann, J.) (citing *Dickerson v. Central Florida Radiation Oncology Group*, 225 B.R. 241, 244 (M.D. Fla. 1998)).
[17] See *In re Royal Business School, Inc.*, 157 B.R. 932, 941-42 (Bankr. E.D.N.Y. 1983); *In re Dolphin Titan Intern., Inc.*, 93 B.R. 508, 512-13 (Bankr. S.D. Tex. 1988).
[18] *Dickerson*, 225 B.R. at 244.
[19] Doc. No. 674, Ex. B.

similar issue post-petition by filing a petition for declaratory relief in Florida state court on August 29, 2014.[20]

Partner's Healthcare, however, *never* filed a claim against the Debtor in this bankruptcy case, even though they had actual knowledge of the case and of the bar date to file a proof of claim. Federal Rule of Bankruptcy Procedure 3003(c)(3) provides the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Partner's Healthcare does not seek an extension of time to file a claim because "Partner's Healthcare is not seeking a distribution as a creditor of the Estate or some sort of set off."[21] If Partner's Healthcare had a claim against the Debtor, they necessarily needed to assert it in this bankruptcy case. They did not. As such, Partner's Healthcare cannot now assert any claim against the Debtor or to the escrow deposit.[22]

Further neither mandatory nor discretionary abstention under §§28 U.S.C. 1334(c)(1 and 2) is merited to allow the Florida state court to intervene at this late date. The Court of Appeals for the Eleventh Circuit adopted the test articulated in *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), for determining whether a civil proceeding is sufficiently "related to" a bankruptcy to confer federal jurisdiction. The test is "whether the outcome of the proceeding could conceivably have an effect on the bankruptcy estate" or alters the debtor's rights, liabilities, options, or freedom of action, in a way that impacts the administration of the estate.[23] The

---

[20] Case No. 14-CA-9923 pending before the Circuit Court, Hillsborough County, Florida. The Court reserves ruling on whether the filing of this action violated the automatic stay arising under §362 of the Bankruptcy Code or the order confirmation the Debtor's plan. Doc. No. 347.
[21] Doc. No. 692.
[22] *In re Peninsular Oil Corp.*, 399 B.R. 532, 539 (Bankr. M.D. Fla. 2008) (holding a creditor has no standing to assert any claim concerning the administration of the estate where the creditor failed to establish grounds justifying the filing of a late filed claim).
[23] *In Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting 743 F.2d at 994).

jurisdictional grant is broad and the "the proceeding need not necessarily be against the debtor or against that debtor's property."[24]

The terms of the Debtor's confirmed plan specifically provide this Court retains jurisdiction over all matters "necessary to ensure that the purposes and intent of the Modified Plan are carried out."[25]  Articles 12.1 and 12.2.14 of the Modified Plan reserve this Court's jurisdiction over this case generally and specifically "to determine all questions and disputes regarding title to the assets of the Debtor or the Estate."[26]  The Court again notes that Partner's Healthcare was fully advised of the filing of this bankruptcy case and received all notices, including the right to participate in the plan confirmation process.  Partner's Healthcare simply decided not to engage.

Nonetheless, Partner's Healthcare belatedly suggests this Court should abstain from resolving this dispute relying primarily on 28 U.S.C. § 1334(c) (1), which provides a federal court, may exercise its discretion to abstain "in the interest of justice, or in the interest of comity with State Courts or respect for State law."[27]  Many factors are considered[28] but the greatest weight is afforded to "whether the administration of the bankruptcy estate will be impaired by adjudication in state court."[29]  Partner's Healthcare argues discretionary abstention is appropriate

---

[24] *E.S. Bankest v. United Beverage Fla.*, 284 B.R. 162, 168-169 (Bankr. S.D. Fla. 2002) (citing *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999)).
[25] Doc. No. 347.
[26] Doc. No. 242.
[27] Doc. No. 692.
[28] Factors considered include: (1) the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; (7) whether a separate state law case is pending; (8) whether the issues are core proceedings or are directly related to the debtor's reorganization; and (9) the prejudice to the defendants. *Eastport Associates v. City of Lost Angeles (In Re Eastport Associates)*, 935 F.2d 1071, 1075-76 (9th Cir. 1991); *In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 2010 Bankr. LEXIS 3925, 2010 WL 4483361, *11-12 (Bankr. S.D. Fla. 2010); *E.S. Bankest v. United Beverage Florida (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002); *Mid-Atlantic Handling System, LLC v. Mitsubishi Caterpillar Forklift Am. Inc.*, 304 B.R. 111, 126 (Bankr. N.J. 2003); *In re Strano*, 248 B.R. 493, 504 (Bankr. D.N.J. 2000).
[29] *E.S. Bankest*, 284 B.R. at 175.

because if the Debtor recovers the Escrow Deposit it would only provide the bankruptcy estate funds to transfer to the creditors. Bringing funds in to the estate and redistributing them to creditors is exactly what is required to administer this Debtor's estate. Indeed, the entire point of a liquidating plan of reorganization, such as the Debtor's confirmed plan, is to liquidate assets and pay creditors. (Again, I note that Partner's Healthcare could have participated in this distribution if they had filed a timely, allowed proof of claim, which they did not.) Therefore, if the Court abstains from hearing this matter it necessarily will impair the administration of the estate. Abstention is not warranted.

The $50,000 escrow deposit held by Tampa Title is property of the Debtor's estate. The Debtor's motion for turnover is granted, and Tampa Title is directed to expeditiously turnover the monies to the Debtor. Partner's Healthcare lost any interest in the monies on November 11, 2009, pursuant to the binding LOI, and any other claim Partner's Healthcare may have had against the Debtor is now barred due to their failure to timely file a proof of claim in this bankruptcy case. No basis for abstention exists.

A separate order consistent with this Memorandum Opinion shall be entered.

Done and Ordered in Orlando, Florida, on August 19, 2015.

*[signature]* K.O.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

**Copies furnished to:**

The Clerk is directed to serve a copy of this Order on all interested parties.